UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRONX INDEPENDENT LIVING SERVICES, a nonprofit organization, DISABLED IN ACTION OF METROPOLITAN NEW YORK, a nonprofit organization, ROBERT HARDY, an individual, and RODOLFO DIAZ, an individual, on behalf of themselves and all others similarly situated, | No. 16-CV-5023 |
| Plaintiffs, | **COMPLAINT** |
| -against- | |
| METROPOLITAN TRANSIT AUTHORITY, a public benefit corporation, THOMAS PRENDERGAST, in his official capacity as chairman and chief executive officer of the Metropolitan Transit Authority, NEW YORK CITY TRANSIT AUTHORITY, a public benefit corporation, and VERONIQUE HAKIM, in her official capacity as president of the New York City Transit Authority, | |
| Defendants. | |

## INTRODUCTION

1.     This class-action lawsuit challenges the Metropolitan Transit Authority ("MTA") and New York City Transit Authority ("NYC Transit")'s refusal to abide by well-established mandates of federal disability law relating to making public transportation accessible.

2.     In October 2013, the MTA and NYC Transit undertook a $21.85 million renovation of the Middletown Road station on the number 6 subway line, serving the Pelham Bay neighborhood of the Bronx.

3.     Though the MTA and NYC Transit spent millions of dollars to replace critical structural elements of the station, it failed to construct elevators that would grant persons with

mobility disabilities access to the Middletown Road station, despite the fact that it would have been technically feasible to construct elevators.

4.      The MTA and NYC Transit's failure to construct elevators at the Middletown Road station is particularly detrimental to people with mobility disabilities because so few subway stations are accessible to them.

5.      Access to the subway system is critical for everyone who lives in, works in, or travels to New York City.  The subway system is the fastest, most reliable way for city residents and visitors to travel long distances, including travel between boroughs.  Most New Yorkers depend on the subway to commute to work, run errands, go shopping, visit medical providers, and attend social and cultural events.

6.      Yet nearly 26 years after the passage of the ADA, only 19% of subway stations are fully accessible to persons with disabilities.

7.      The abysmal percentage of accessible subway stations makes the New York City subway system one of the least accessible public transportation systems in the United States.  By comparison, 100% of stations in Washington DC, 100% of stations in the San Francisco Bay Area, 74% of stations in Boston, 68% of stations in Philadelphia, and 67% of stations in Chicago are wheelchair-accessible.

8.      As a result, individuals who cannot use stairs or escalators because of their disabilities are excluded from vast swaths of the subway system.

9.      Scheduled construction projects present a cost-effective opportunity to increase the accessibility of the subway system to persons with disabilities so that all potential subway riders can enjoy the increased usability of remodeled stations.

10.     Thus, the Americans with Disabilities Act and Section 504 of the Rehabilitation Act require transportation authorities to make their stations accessible to persons with disabilities when renovating, rebuilding, or otherwise altering stations in a way that affects or can affect the usability of any part of the station.

11.     The MTA and NYC Transit failed to follow this legal mandate when renovating the Middletown Road station.

12.     As a result, people with mobility disabilities continue to be excluded from the Middletown Road station in violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the New York City Human Rights Law.

**<u>JURISDICTION</u>**

13.     This is an action for declaratory and injunctive relief brought pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

14.     Under 28 U.S.C. §§ 1331 and 1343, this Court has jurisdiction over claims arising under the ADA and Section 504.

15.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the NYCHRL claim.

16.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to issue a declaratory judgment.

**<u>VENUE</u>**

17.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because Defendants are located within this judicial district and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

## PARTIES

18.     Plaintiff Bronx Independent Living Services ("BILS") is an independent living center serving persons with disabilities who live in the Bronx.  Founded in 1983, BILS is a consumer-based, nonprofit organization that provides services and advocacy for independent living for individuals with disabilities.

19.     Approximately sixty percent of BILS board members and approximately eighty percent of BILS staff are persons with disabilities.

20.     BILS constituents include individuals with mobility disabilities who would use the Middletown Road subway station if it was accessible to persons with mobility disabilities.

21.     Plaintiff Disabled in Action of Metropolitan New York ("DIA") is a nonprofit civil rights membership organization, founded in 1970, that is committed to ending discrimination against people with all disabilities.

22.     Plaintiff Robert Hardy is a resident of the Bronx.  He has multiple disabilities, including arthrogryposis multiplex congenita, and uses a scooter for mobility.  He is a qualified individual with a disability within the meaning of all applicable statutes.  Mr. Hardy is a constituent of Bronx Independent Living Services and a member of Disabled in Action.  Mr. Hardy would use the subway system, including the Middletown Road subway station specifically, if the stations were made accessible to him.

23.     Plaintiff Rodolfo Diaz is a resident of the Bronx.  Mr. Diaz has hydrocephalus, scoliosis, and spina bifida, and he uses a wheelchair for mobility.  He is a qualified individual with a disability within the meaning of all applicable statutes.  Mr. Diaz is an employee and constituent of Bronx Independent Living Services.  He would use the subway system, including the Middletown Road subway station specifically, if the stations were made accessible to him.

24.     Defendant Metropolitan Transit Authority ("MTA") is a public benefit corporation chartered by the New York State Legislature in 1965 under the Metropolitan Transportation Authority Act, N.Y. Pub. Auth. Law § 1260 *et seq.*

25.     The MTA is the largest transportation network in North America, serving a population of 15.2 million people in the 5000 square mile area covering New York City, Long Island, southeastern New York State, and Connecticut.

26.     As of February 25, 2015, the MTA had an operating budget of $13.9 billion.

27.     Defendant Thomas Prendergast, sued in his official capacity, is Chairman and Chief Executive Officer of the MTA.

28.     Defendant MTA New York City Transit ("NYC Transit") is a public benefit corporation pursuant to N.Y. Pub. Auth. Law § 1200 *et seq.*

29.     NYC Transit is a subsidiary of the MTA.

30.     NYC Transit administers 24 subway lines with 468 stations within Manhattan, the Bronx, Brooklyn, and Queens, as well as the Staten Island Railway and the New York City buses.

31.     As of February 25, 2015, NYC Transit had an operating budget of $10.6 billion.

32.     Defendant Veronique Hakim, sued in her official capacity, is the President of NYC Transit.

## FACTUAL ALLEGATIONS

**A.     Rampant Physical Access Barriers in New York City Subway System**

33.     Twenty-six years after the passage of the Americans with Disabilities Act, less than one-fifth of subway stations in New York City are accessible to persons with mobility disabilities.

34.     The inaccessibility of the New York City subway system adversely impacts not only riders and would-be riders with disabilities, but also seniors, parents with strollers, people with temporary disabilities, people with suitcases or bags, and many other riders who would benefit from increased station accessibility.

35.     There are no wheelchair-accessible subway stations on the 6 line in the Bronx between the Pelham Bay Park and Hunts Point Avenue stations.  That segment of the subway system covers 4.4 miles of track with 10 inaccessible stations, including the Middletown Road station.

**B.     Failure to Construct Elevators During Renovation of Middletown Road Station**

36.     The Middletown Road subway station, located in the Pelham Bay neighborhood of the Bronx, has a three-level layout where subway riders must ascend one flight of stairs to reach a mezzanine where tickets are sold, then climb a second flight of stairs to reach the platforms for trains in the direction of either Manhattan or Pelham Bay Park.

37.     As of 2014, the Middletown Road station had an annual ridership of 661,242 despite the station closure, an increase of 49.6% over its 2013 ridership of 441,950, making it the fastest-growing station in the Bronx and the 15th-fastest growing station in the subway system.

38.     Between October 5, 2013 and May 4, 2014, the MTA and NYC Transit closed the Middletown Road station in both directions for construction and renovation.

39.     The work performed at the Middletown Road station included the following projects:

a)  Repairing and replacing structural steel framing for the station mezzanine;

b)  Replacing floors, walls, ceilings, facilities, and equipment;

c)  Replacing track through-span structures;

d)  Replacing street and platform stairs;

e)  Reconstructing platform edges;

f)  Replacing and repairing concrete platforms;

g)  Replacing canopies over the platforms and the street stairs;

h)  Replacing platform windscreens and railings;

i)  Repairing corroded steel;

j)  Painting;

k)  Installing new lights, "help points," a fire alarm system, a bird deterrent system, artwork, platform lighting, and speakers.

40.     As part of the renovation, the MTA and NYC Transit took care to replace staircases so that riders without disabilities could travel between the street, mezzanine, and station platforms.

41.     Despite the extensive construction that touched upon almost every part of the Middletown Road station, the MTA and NYC Transit failed to construct elevators.

42.     Elevator construction at the Middletown Road station would have been technically feasible.

43.     As a result of the failure to build elevators, persons with mobility disabilities still cannot access the subway services offered at the Middletown Road station.

**C.    Harm to Plaintiff BILS and its Constituents**

44.     The mission of BILS is to ensure full integration, independence, and equal opportunity for all people with disabilities by removing barriers to the social, economic, cultural, and civic life of the community.

45.     In furtherance of its mission, BILS seeks to improve the quality of life of Bronx residents with disabilities through programs that empower them to gain greater control of their lives and achieve full and equal integration into society.  BILS accomplishes this goal through its

services; through its advocacy for systems changes to remove physical, attitudinal, and communication barriers to people with disabilities; and through its education and awareness programs.   BILS staff members with mobility disabilities travel to the area of the Bronx served by the Middletown Road station to perform outreach and advocacy work in the community.   The absence of an accessible subway station in that neighborhood makes it much more difficult for BILS staff to travel to that area because they must use less efficient methods of transportation and must spend time traveling that they could otherwise dedicate to other BILS programs.

46.      BILS has expended substantial time and resources on advocacy work concerning the accessibility of the subway stations, including the Middletown Road subway station.

47.      For instance, BILS staff diverted their scarce resources to conducting outreach in the neighborhood surrounding the Middletown Road station to assess the impact of the MTA and NYC Transit's failure to construct elevators at the station.

48.      Because the Middletown Road station and other subway stations throughout the Bronx are inaccessible, BILS staff often counsel consumers with mobility disabilities to rely on buses and paratransit instead of the subway in order to travel around the City.   Counseling consumers to avoid the central method of transportation available to New Yorkers without disabilities frustrates BILS's mission of ensuring equal opportunities for people with disabilities.

49.      BILS continues to advocate for equal access to transportation systems for persons with disabilities in the Bronx.

50.      BILS has had to expend resources advocating for constituents who are unable to access the subway at that location and must instead use less efficient and reliable methods of transportation because the Middletown Road station and the 6 Line of the New York City Subway system are not accessible to individuals with mobility disabilities.   As a result of the

inaccessibility of the Middletown Road station, BILS has fewer resources to dedicate to its other programs.  This injury to BILS is ongoing and would be directly redressed by injunctive and declaratory relief.

51.     In addition, BILS serves between 1,600 and 1,800 consumers per year.  These consumers include individuals with disabilities who are deterred from using the Middletown Road station because it does not have any elevators.  Thus, one or more of BILS' constituents have been injured as a direct result of the MTA and NYC Transit's discriminatory actions and failures to act and would have standing to sue in their own right.

52.     BILS can bring this action on behalf of itself and its constituents because the interests at stake are germane to BILS' purpose.  Plaintiffs' claims are limited to injunctive and declaratory relief which do not require the participation of individual constituents in the lawsuit.

**D.      Harm to Plaintiff DIA and its Members**

53.     DIA consists primarily of, and is directed by, people with disabilities.  DIA members with all types of disabilities live throughout New York City.

54.     DIA's objectives include promoting the ability of persons with disabilities to live independently.  To that end, DIA advocated for the passage of the Rehabilitation Act of 1973 and the Americans with Disabilities Act.

55.     DIA has expended and continues to expend substantial time and resources on advocacy concerning policies and practices that affect disabled New York City residents seeking equal access to transportation.  For instance, in 1980, DIA organized a sit-in to demand wheelchair-accessible city buses and filed a lawsuit resulting in a ruling that the MTA was required to take affirmative steps to accommodate riders with disabilities on the City's public transportation systems.  As a result of DIA's investment of resources, the MTA agreed to equip buses with wheelchair lifts so that persons with mobility disabilities could use them.

56.     Many DIA members have difficulty using the subway system or are completely unable to use the subway system due to the lack of functioning elevators at an overwhelming majority of stations, including the Middletown Road station.

57.     Accordingly, DIA maintains a list of accessible stations for its members and provides additional information to its membership regarding accessible transportation options. DIA members include individuals with mobility disabilities who would use the subway system, including the Middletown Road station, if it was vertically accessible to persons with disabilities.

58.     One or more members of DIA, including Plaintiff Robert Hardy, have been injured as a direct result of Defendants' discriminatory actions and failures to act and would have standing to sue in their own right.  DIA members, including individuals with mobility disabilities, live throughout New York City.  DIA membership includes individuals with disabilities who are deterred from using the Middletown Road station because it does not have any elevators.

59.     DIA can bring this action on behalf of itself and its members because the interests at stake are germane to DIA's purpose.  Plaintiffs' claims are limited to injunctive and declaratory relief which do not require the participation of individual constituents in the lawsuit.

60.     In addition, DIA itself has been injured as a direct result of Defendants' actions and omissions as discussed herein.  DIA's interests are adversely affected because it must expend resources, as it is doing in this lawsuit, to advocate for its members who are harmed by Defendants' actions and omissions because they cannot access the subway at that location and must instead use less efficient and reliable methods of transportation.  DIA has suffered injury in the form of diversion of these resources and frustration of its mission.  This injury to DIA is ongoing and would be directly redressed by injunctive and declaratory relief.

E.    **Harm to Plaintiff Hardy**

61.    Mr. Hardy lives in the Parkchester neighborhood of the Bronx.  If the Middletown Road station was accessible, it would be the closest accessible station to his home.

62.    Because of the lack of accessible subway stations in his neighborhood, he must travel to the Pelham Bay Park station at the end of the 6 train or the Gun Hill Road station on the 2 train when he wants to use the subway.  Both of these stations are approximately 3 miles from his home.

63.    Mr. Hardy currently relies on bus service to travel around the City because it is more accessible than the subway.  The bus system, however, is slower, less efficient, and less convenient for him than the subway would be.

64.    For example, Mr. Hardy travels from his home in Parkchester to the Co-op City neighborhood of the Bronx at least twice per month to eat at restaurants, shop at the mall, and watch movies.  To travel between Parkchester and Co-op City, Mr. Hardy must take three different buses.

65.    If the Middletown Road station was wheelchair-accessible, Mr. Hardy would use it to travel to multiple locations throughout the City.  Indeed, as just one example, Mr. Hardy estimates that being able to use the Middletown Road station to travel to the Pelham Bay Park station would cut the round-trip travel time on his trips to Co-op City by approximately one hour due to the need for fewer bus connections.

66.    Because the Middletown Road station is inaccessible, Mr. Hardy must spend significant additional time to travel around the City when he wants to eat out, go shopping, or go to the movies.

67.    Mr. Hardy would use the Middletown Road subway station to travel around New York City if the station was accessible to him using his scooter.

F.      **Harm to Plaintiff Diaz**

68.     Mr. Diaz lives and works in the Bronx.  In the course of his employment with Bronx Independent Living Services as a healthy living coordinator and MFP transition specialist, Mr. Diaz travels throughout the Bronx to meet with consumers and provide them with information, resources, and assistance to help them transition into independent living in the community.

69.     Because most subway stations either lack elevators entirely or have elevators that are out of service, Mr. Diaz uses City buses as his primary method of transportation.

70.     The buses, however, are a slower and less convenient method of transportation than the subway.  It often takes up to two hours for Mr. Diaz to travel between destinations within the Bronx for his work, using multiple buses.

71.     If Mr. Diaz could use the subways, it would take less time for him to travel throughout the Bronx and the City.

72.     Mr. Diaz has traveled to the area served by the Middletown Road station about three times per year for the last six years to do field work with BILS consumers.  He anticipates that he will continue traveling to this area on a regular basis for work.

73.     Mr. Diaz would use the Middletown Road subway station to travel around New York City if the station was wheelchair-accessible.

## CLASS ACTION ALLEGATIONS

74.     Pursuant to Federal Rule of Civil Procedure 23(b)(2), named Plaintiffs Bronx Independent Living Services, Disabled in Action, Robert Hardy, and Rodolfo Diaz bring this action for injunctive and declaratory relief on their own behalf, on behalf of the constituents of BILS and the members of DIA, and on behalf of all persons similarly situated.  The class that Plaintiffs seek to represent consists of all persons with mobility disabilities who cannot currently

use the Middletown Road station because of accessibility barriers at that station and who would use the station if it were made accessible.

75.     The claims asserted herein are solely for injunctive and declaratory relief for class members; damage claims are not included in this complaint.

76.     The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court.  According to the 2014 American Community Survey, 112,444 Bronx residents have a mobility disability.

77.     There is a well-defined community of interest in the questions of law and fact involved affecting the persons to be represented in that they are all being denied access to the Middletown Road station.

78.     Common questions of law and fact predominate, including, but not limited to, whether Defendants' failure to construct elevators at the Middletown Road Station while altering the station in a manner that affects its usability violates federal and local disability rights laws.

79.     Plaintiffs are adequate class representatives because they, or the persons they serve, are directly impacted by Defendants' failure to provide access to the Middletown Road station.  Plaintiffs' interests are not antagonistic to, or in conflict with, the interests of the class as a whole.  The attorneys representing the class are highly trained, duly qualified, and very experienced in representing plaintiffs in civil rights class actions for injunctive relief.

80.     Plaintiffs' claims are typical of the claims of the class as a whole because Plaintiffs are similarly affected by Defendants' failure to make the Middletown Road station accessible to persons with mobility disabilities during alterations to the station.

81.     Defendants have acted and/or failed to act on grounds generally applicable to the class as a whole, thereby making final declaratory and injunctive relief appropriate with respect to the class as a whole.

82.     References to Plaintiffs shall include each Plaintiff and each member of the class, unless otherwise indicated.

**FIRST CAUSE OF ACTION**
Violation of Title II of the Americans with Disabilities Act
(42 U.S.C. § 12131, *et seq.*)

83.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

84.     Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, prohibits a public entity from excluding a person with a disability from participating in or otherwise benefiting from its programs, or otherwise discriminating against a person on the basis of disability: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

85.     The term "disability" includes physical and mental conditions that substantially limit one or more major life activities.  42 U.S.C. § 12102(2).

86.     A "qualified individual with a disability" means an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

87.     The named Plaintiffs, the board members and constituents of organizational Plaintiff BILS, the members of organizational Plaintiff DIA, and the class members are persons with disabilities within the meaning of the statute in that they have conditions that substantially limit one or more major life activities, such as walking.  They are also qualified in that they live in, work in, and/or travel to New York City and thus are eligible to benefit from Defendants' program of subway stations.

88.     A "public entity" includes state and local governments, their agencies, and their instrumentalities.  42 U.S.C. § 12131(1).  The MTA and NYC Transit are public entities within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

89.     The failure to alter existing facilities used in the provision of designated public transportation services "in such a manner that, to the maximum extent feasible, the altered portions to the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations" is an act of discrimination under Title II of the ADA.  42 U.S.C. § 12147(a),

90.     The Middletown Road station is a "facility . . . used in the provision of designated public transportation services" within the meaning of 42 U.S.C. § 12147(a).

91.     Congress authorized the United States Department of Transportation to promulgate regulations implementing the ADA's provisions concerning access to public transportation.  42 U.S.C. § 12149(a).

92.     One of these regulations, codified at 49 C.F.R. § 37.43(a)(1), applies to alterations of transit facilities "in a way that affects or could affect the usability of the facility or part of the facility."

93.     Transit authorities supervising such alterations, such as the MTA and NYC Transit, must "make the alterations . . . in such a manner, to the maximum extent feasible, that the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations." *Id.*

94.     The regulations further define an "alteration" to an existing transit facility as including, but not limited to, "remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions."  49 C.F.R. § 37.3.

95.     The station renewal project undertaken at the Middletown Road station in late 2013 and early 2014 included "remodeling," "renovation," "rehabilitation," "reconstruction," and "changes or rearrangement in structural parts or elements," and thus was an "alteration" within the meaning of 49 C.F.R. § 37.3.

96.     The replacement of staircases connecting the street, mezzanine, and platforms at the Middletown Road station during the 2013-14 station renewal project is an alteration that affects the usability of the station pursuant to 49 C.F.R. § 37.43(a)(1).

97.     Defendants failed to install elevators at the Middletown Road station when making alterations that affect the usability of the station, including replacing staircases, in violation of Title II of the ADA.

98.     Defendants' conduct constitutes an ongoing and continuous violation of the ADA. Unless restrained from doing so, Defendants will continue to violate the law.  Through their conduct, Defendants have caused and will continue to cause Plaintiffs immediate and irreparable injury.

99.     Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs. 42 U.S.C. § 12133.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## SECOND CAUSE OF ACTION
Violation of Section 504 of the Rehabilitation Act of 1973
29 U.S.C. § 794 *et seq.*

100.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

101.     Section 504 of the Rehabilitation Act of 1973 provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."  29 U.S.C. § 794(a).

102.     Plaintiffs, board members and constituents of organizational Plaintiff BILS, members of organizational Plaintiff DIA, and class members are otherwise qualified individuals with disabilities within the meaning of Section 504 in that they have impairments which substantially limit one or more major life activities, such as walking, and have reason to and are otherwise eligible to participate in Defendants' subway program at the Middletown Road station. *See* 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102).

103.     Defendants MTA and NYC Transit are recipients of federal financial assistance within the meaning of Section 504 and have received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

104.     Defendants MTA and NYC Transit are instrumentalities of the New York State government.

105.    All of the operations of Defendants MTA and NYC Transit are "program[s] or activit[ies]" within the meaning of the Rehabilitation Act.  29 U.S.C. § 794(b)(1)(A).

106.    The term "discrimination" as defined by Section 504 includes the failure to alter existing facilities used in the provision of designated public transportation services "in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations."  42 U.S.C. § 12147(a).

107.    The U.S. Department of Transportation regulations implementing Section 504 provide that "[n]o qualified person with a disability shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity that receives Federal financial assistance administered by the Department of Transportation."  49 C.F.R. § 27.7(a).

108.    The prohibition on discrimination in the U.S. Department of Transportation regulations applies to "aid, benefit, or service provided under a program or activity receiving Federal financial assistance," including "any aid, benefit, or service provided in or through a facility that has been constructed, expanded, altered, leased or rented, or otherwise acquired, in whole or in part, with Federal financial assistance."  49 C.F.R. § 27.7(b)(6).

109.    Defendants have discriminated against and continue to discriminate against Plaintiffs by denying them the opportunity to participate in or benefit from the aid, benefit, or service offered at the Middletown Road station.  49 C.F.R. § 27.7(b)(1)(i).

110.    Transit authorities supervising alterations that affect or could affect the usability of transit facility in whole or in part, such as the MTA and NYC Transit, must "make the alterations . . . in such a manner, to the maximum extent feasible, that the altered portions of the

facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations."  49 C.F.R. § 37.43(a)(1).

111.    The regulations further define an "alteration" to an existing transit facility as including, but not limited to, "remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions."  49 C.F.R. § 37.3.

112.    The station renewal project undertaken at the Middletown Road station in late 2013 and early 2014 included "remodeling," "renovation," "rehabilitation," "reconstruction," and "changes or rearrangement in structural parts or elements," and thus was an "alteration" within the meaning of 49 C.F.R. § 37.3.

113.    The replacement of staircases connecting the street, mezzanine, and platforms at the Middletown Road station during the 2013-14 station renewal project is an alteration that affects the usability of the station pursuant to 49 C.F.R. § 37.43(a)(1).

114.    Defendants failed to install elevators at the Middletown Road station when making alterations that affect the usability of the station, including replacing staircases, in violation of Section 504.

115.    Defendants and their agents and employees have violated and continue to violate Section 504 and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs to discrimination based solely by reason of their disabilities in the benefits and services of Defendants' subway program at the Middletown Road station.

116.    As a direct and proximate cause of the aforementioned acts, Plaintiffs have been and continue to be injured.

117.   Defendants' conduct constitutes an ongoing and continuous violation of Section 504.  As a result, Plaintiffs are entitled to declaratory and injunctive relief, as well as reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
Violation of the New York City Human Rights Law
(N.Y.C. Admin. Code § 8-101 *et seq.*)

118.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs in this Complaint.

119.   The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4)(a), provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived . . . disability . . . status of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . ."

120.   The term "person" includes corporations.  N.Y.C. Admin. Code § 8-102(1).

121.   The MTA is a public benefit corporation and thus is a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

122.   Likewise, NYC Transit is a subsidiary of the MTA and thus is a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

123.   Defendants Prendergast and Hakim are being sued in their official capacities as the chairman of the MTA and the president of NYC Transit respectively.

124.   The term "place or provider of public accommodation" includes "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places whether licensed or unlicensed, where goods, services,

facilities, accommodations, advantages or privileges of any kind are extended, offered, sold or otherwise made available."  N.Y.C. Admin. Code § 8-102(9).

125.    The Middletown Road station constitutes a public accommodation within the meaning of the NYCHRL because it is a place where the MTA and NYC Transit offer access to the program of subway services to the general public.

126.    As persons within the meaning of the NYCHRL, Defendants act as the "managers" of the Middletown Road station, a public accommodation.

127.    In so doing, Defendants deny the accommodations, advantages, facilities, and privileges of the Middletown Road station to persons with disabilities for the reasons set forth herein.

128.    The NYCHRL further requires that persons "shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."  N.Y.C. Admin. Code § 8-107(15).  The term "covered entity" is defined as a person required to comply with any provision of the NYCHRL.

129.    The MTA, NYC Transit, and Mr. Prendergast and Ms. Hakim in their official capacities qualify as covered entities and must make reasonable accommodations necessary to allow persons with disabilities the opportunity to benefit from Defendants' subway program pursuant to N.Y.C. Admin. Code § 8-107(15).  Defendants have made inadequate or no reasonable accommodations to allow persons with disabilities the opportunity to use the services offered at the Middletown Road station.

130.    As a direct and proximate result of Defendants' violations of the NYCHRL, Plaintiffs have been injured as set forth herein.

131.    Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL.  Unless restrained from doing so, Defendants will continue to violate said law, and this conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

132.    In the absence of an injunction, Plaintiffs will suffer irreparable harm because they will continue to be discriminated against and denied the accommodations, advantages, facilities, and privileges of Defendants' subway program offered at the Middletown Road station, as well as reasonable accommodations that would provide them the opportunity to benefit from Defendants' subway program at the Middletown Road station.

133.    Thus, Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

Wherefore, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION
### Declaratory Relief

134.    Plaintiffs re-allege and incorporate herein all previously alleged paragraphs in this Complaint.

135.    Plaintiffs contend that Defendants have failed and are failing to comply with applicable laws prohibiting discrimination against persons with disabilities in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*; and the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*

136.    Defendants disagree with Plaintiffs' contention.

137.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

Wherefore, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on their own behalf and on behalf of the class, pray for the following relief against Defendants:

138.    That this matter be certified as a class action with the class defined as set forth above, that Plaintiffs be appointed class representatives, and their attorneys be appointed class counsel;

139.    For an order and judgment enjoining Defendants from violating the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the New York City Human Rights Law, and requiring Defendants to make the Middletown Road station accessible to persons with mobility disabilities;

140.    For an order and judgment declaring that Defendants' acts and omissions as challenged herein are unlawful;

141.    For an award of Plaintiffs' reasonable attorneys' fees and costs; and

142.    For such other relief that the Court may deem just and proper.

Dated:  June 28, 2016                       Respectfully submitted,
        New York, New York

                                            _____
                                            Michelle Caiola (MC2110)
                                            Rebecca Rodgers (RR1349)
                                            DISABILITY RIGHTS ADVOCATES
                                            675 Third Avenue, Suite 2216
                                            New York, NY 10017
                                            Tel:  (212) 644-8644
                                            Fax:  (212) 644-8636
                                            mcaiola@dralegal.org
                                            rrodgers@dralegal.org

                                            *Attorneys for Plaintiffs*