UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
:
BRONX INDEPENDENT LIVING SERVICES, :
et al., :
:
              Plaintiffs, :
:
  - against - : **16 Civ. 5023 (ER)**
:
METROPOLITAN TRANSIT AUTHORITY, et : **COMPLAINT-IN-INTERVENTION**
al., :
:
              Defendants. :
:
------------------------------------------------------------- X
UNITED STATES OF AMERICA, :
:
              Plaintiff-Intervenor, :
:
  - against - :
:
METROPOLITAN TRANSPORTATION :
AUTHORITY and NEW YORK CITY TRANSIT :
AUTHORITY, :
:
              Defendants. :
------------------------------------------------------------- X

      Plaintiff United States of America (the "United States"), by and through its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, alleges as follows:

## INTRODUCTION

      1.     Defendants Metropolitan Transportation Authority ("MTA") and New York City Transit Authority ("NYC Transit") have violated the statutory and regulatory provisions of Title II of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12131-12165 and its implementing regulations, 28 C.F.R. Part 35 and 49 C.F.R. Part 37, for failing to install an

elevator in the Middletown Road subway station serving the Pelham Bay neighborhood in the Bronx, despite spending more than twenty-seven million dollars on renovations of the station. As a result, individuals with mobility disabilities, including individuals who use wheelchairs, are unable to access the Middletown Road station.

## JURISDICTION AND PARTIES

2. This Court has jurisdiction over this action under 42 U.S.C. § 12133 and 28 U.S.C. §§ 1331 and 1345. This Court has authority to grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. The MTA is a public benefit corporation chartered by the New York State Legislature under the Metropolitan Transportation Authority Act, N.Y. Pub. Auth. Law § 1260 *et seq.*, and is a public entity that provides public transportation within the meaning of 42 U.S.C. § 12141, 49 C.F.R. § 37.3, and is therefore subject to Title II of the ADA and its implementing regulations for entities providing public transportation, 28 C.F.R. Part 35 and 49 C.F.R. Part 37.

4. NYC Transit is a public benefit corporation pursuant to N.Y. Pub. Auth. Law § 1200 *et seq.*, and a subsidiary of the MTA, and is a public entity that provides public transportation within the meaning of 42 US.C. § 12141, 49 C.F.R. § 37.3, and is therefore subject to Title II of the ADA and its implementing regulations for entities providing public transportation, 28 C.F.R. Part 35 and 49 C.F.R. Part 37.

## STATUTORY AND REGULATORY BACKGROUND

5. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. 35.149. A "public entity" includes local
<sub>2</sub>

elevator in the Middletown Road subway station serving the Pelham Bay neighborhood in the Bronx, despite spending more than twenty-seven million dollars on renovations of the station. As a result, individuals with mobility disabilities, including individuals who use wheelchairs, are unable to access the Middletown Road station.

## JURISDICTION AND PARTIES

2. This Court has jurisdiction over this action under 42 U.S.C. § 12133 and 28 U.S.C. §§ 1331 and 1345. This Court has authority to grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. The MTA is a public benefit corporation chartered by the New York State Legislature under the Metropolitan Transportation Authority Act, N.Y. Pub. Auth. Law § 1260 *et seq.*, and is a public entity that provides public transportation within the meaning of 42 U.S.C. § 12141, 49 C.F.R. § 37.3, and is therefore subject to Title II of the ADA and its implementing regulations for entities providing public transportation, 28 C.F.R. Part 35 and 49 C.F.R. Part 37.

4. NYC Transit is a public benefit corporation pursuant to N.Y. Pub. Auth. Law § 1200 *et seq.*, and a subsidiary of the MTA, and is a public entity that provides public transportation within the meaning of 42 US.C. § 12141, 49 C.F.R. § 37.3, and is therefore subject to Title II of the ADA and its implementing regulations for entities providing public transportation, 28 C.F.R. Part 35 and 49 C.F.R. Part 37.

## STATUTORY AND REGULATORY BACKGROUND

5. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. 35.149. A "public entity" includes local

governments, their agents, and their instrumentalities. 42 U.S.C. § 12131(1). NYC Transit and MTA are public entities within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104.

6. With respect to public transportation, when alterations are made to an existing public transportation facility, "it shall be considered discrimination . . . for a public entity to fail to make such alterations . . . in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs[.]" 42 U.S.C. § 12147(a). Moreover, where a public entity alters a portion of a facility that affects or could affect usability of or access to an area of the facility containing a "primary function," the entity is required to "make the alterations in such manner that, to the maximum extent feasible, the path of travel to the altered area . . . are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs" where the cost of such alterations to the path of travel are not "disproportionate" to the overall cost of the alterations. *Id.*

7. In order to implement the prohibitions and requirements of Title II of the ADA with respect to public transportation, Congress authorized the United States Department of Transportation to promulgate regulations. *See* 49 C.F.R. Part 37 (the "DOT Regulations").

8. 49 C.F.R. § 37.43(a)(1) provides that:

> When a public entity alters an existing facility or a part of an existing facility used in providing designated public transportation services in a way that affects or could affect the usability of the facility or part of the facility, the entity shall make the alterations (or ensure that the alterations are made) in such a manner, to the maximum extent feasible, that the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations.

9. 49 C.F.R. § 37.43(a)(2) provides that:

> When a public entity undertakes an alteration that affects or could affect the usability of or access to an area of a facility containing a primary function, the entity shall make the alteration in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon completion of the alterations. Provided, that alterations to the path of travel, drinking fountains, telephones and bathrooms are not required to be made readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, if the cost and scope of doing so would be disproportionate.

10. 49 C.F.R. § 37.43(f) provides that:

> When the cost of alterations necessary to make a path of travel to the altered area fully accessible is disproportionate to the cost of the overall alteration, then such areas shall be made accessible to the maximum extent without resulting in disproportionate costs.

**FACTS**

11. The Middletown Road station is located in the Pelham Bay neighborhood in the Bronx and is on the Number 6 subway line.

12. The Middletown Road station has three levels separated by flights of stairs. Subway riders at the Middletown Road station must ascend one flight of stairs to reach a mezzanine level, where Metrocards can be purchased, and climb a second flight of stairs to access the train platform.

13. Between October 5, 2013, and May 4, 2014, the MTA and NYC Transit closed the Middletown Road station in both directions for construction, alterations and renovations as part of a station renewal project (the "Renewal Project").

14. The Renewal Project included the following alterations and renovations:

   a. Replacing floors, walls, ceilings, facilities, and equipment;

   b. Replacing track through-span structures;

   c. Replacing street and platform stairs;

      d. Reconstructing platform edges;

      e. Replacing and repairing concrete platforms;

      f. Replacing canopies over the platforms and the street stairs;

      g. Replacing platform windscreens and railings;

      h. Repairing corroded steel;

      i. Painting; and

      j. Installing new lights, "help points," a fire alarm system, a bird deterrent system, artwork, platform lighting, and speakers.

15. In June 2012, the MTA began the process of initiating a grant application to FTA to use the MTA's Federal Fiscal Year ("FFY") 2012 Section 5307 Formula Funds for the Renewal Project. The Urbanized Area Formula Funding program, 49 U.S.C. § 5307, is a federal program that designates funds for capital and operating assistance for transit systems in urbanized areas and for transportation-related planning. An Urbanized Area is a geographic area with a population exceeding 200,000 persons. Under the Program, federal funds are accessed directly by a designated recipient, such as the MTA. Designated recipients apply to FTA through grant applications and then receive federal funds. Funds are allocated annually based on population.

16. Prior to the commencement of any construction for the Renewal Project, the FTA and DOT corresponded with NYC Transit regarding the MTA's obligations under the ADA. FTA inquired about the technical feasibility of installing an elevator at the Middletown Road station on the Pelham Line. The cost of the Renewal Project included an allocation of over $21 million in FTA funds for alterations and renovations to the Middletown Road station. During these communications, NYC Transit asserted that the installation of an elevator at the

Middletown Road station was not technically feasible and, in addition, would exceed 20% of the overall project cost.

17. In July 2013, the FTA requested additional information from the MTA to substantiate its claim that it would be technically infeasible to install an elevator at the Middletown Road station.

18. In August 2013, in response to the additional information provided by NYC Transit regarding the feasibility of installing an elevator at the Middletown Road station, an FTA project management oversight contractor ("PMOC") conducted a site visit to evaluate NYC Transit's feasibility analysis. Based on the PMOC's trip report, FTA determined that the feasibility analysis was not complete and that additional information was needed. In December 2013, FTA again requested information related to the technical feasibility of installing elevators at the Middletown Road station.

19. Communications between NYC Transit and the FTA regarding the feasibility of installing an elevator at the Middletown Road station continued through May 2014, when MTA and NYC Transit completed construction on the Renewal Project and sought reimbursement from the FTA for project costs.

20. In May 2014, FTA met with the New York City Department of Transportation ("NYCDOT") to review feasibility concerns that FTA had previously raised in correspondence with the MTA and NYC Transit regarding the Middletown Road station. In a letter dated May 6, 2014 from NYCDOT to FTA, NYCDOT acknowledged that installing elevators at the Middletown Road station may have been technically feasible if elevators had been incorporated during the project's design phase.

6

21. Despite making alterations at the station, including the removal and wholesale replacement of all the existing staircases, the MTA and NYC Transit did not install any elevators at the Middletown Road station.

22. On or about July 8, 2014, the FTA informed NYC Transit in a letter that it had determined that NYC Transit was not entitled to reimbursement for the cost of the Middletown Road station project because NYC Transit had failed to comply with the ADA and the DOT implementing regulations. Specifically, the FTA concluded that NYC Transit had failed to demonstrate the existence of any site-specific condition that would have prohibited NYC Transit from making the station readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, under the ADA as required by 49 C.F.R. § 37.43(a)(1), which requires that when a public entity alters an existing facility or part thereof that affects or could affect the usability of a facility, it must make the altered portions of the facility, to the maximum extent feasible, readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations. FTA also requested that NYC Transit submit a plan within 60 days of the letter to bring the Middletown Road station into compliance with the ADA.

23. On December 15, 2014, NYC Transit responded to the FTA's July 8, 2014, letter, disagreeing with the FTA's conclusion. Specifically, relying on 49 C.F.R. § 37.43(a)(2), NYC Transit maintained that it was not required to install an elevator because the cost of such installation would have been disproportionate to the cost of the primary function area work completed at the Middletown Road station.

24. On February 2, 2015, FTA responded to the December 15, 2014, letter. FTA explained that NYC Transit's analysis of its obligations to build an elevator was incorrect

because the disproportionality analysis only applies when an alteration impacting a primary function area triggers the additional requirement to make alterations to the "path of travel." The FTA further explained that any alteration that impacts or could impact the usability of or access to the station or its parts, such as the replacement of the staircases at the station, is covered by 49 C.F.R. § 37.43(a)(1), and thus must be made readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, to the maximum extent feasible, and thus, without regard to cost.

25. After additional correspondence with NYC Transit, on June 27, 2016, FTA issued a final determination that the station renewal project at the Middletown Road station is not in compliance with the ADA.

26. According to FTA, it would have been technically feasible to install one or more elevators at the Middletown Road station to ensure access to the mezzanine level and platform for individuals with disabilities, including individuals who use wheelchairs, at the time the Renewal Project was undertaken.

27. As a result of the failure of the MTA and NYC Transit to install elevators, individuals with disabilities, including individuals who use wheelchairs are unable to have ready access to the subway trains at the Middletown Road station and, as such, MTA and NYC Transit have violated Title II of the ADA and its implementing regulations.

## CLAIM FOR RELIEF

**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12132**

28. The United States respectfully incorporates the allegations of paragraphs 1 through 27 as if fully set forth herein.

29. The failure of MTA and NYC Transit to install elevators at the Middletown Road station as part of the Renewal Project violates Title II of the ADA, 42 U.S.C. §§ 12132, 12147, and its implementing regulations pertaining to public transportation, 28 C.F.R. Part 35 and 49 C.F.R. Part 37, because defendants altered a facility or part thereof in a way that affects or could affect the usability of or access to the station or part of the facility, and failed to make such alterations in such a manner, to the maximum extent feasible, that the altered portions of the facility are readily accessible and usable by individuals with disabilities, including individuals who use wheelchairs.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that the Court grant the following relief:

    A. Grant judgment in favor of the United States on its complaint and declare that the defendants have violated Title II of the ADA, 42 U.S.C. §§ 12131-34 and 12147, and its implementing regulations, by failing to install elevators at the Middletown Road station sufficient to make the station readily accessible to and usable by individuals with disabilities to the maximum extent feasible, including individuals who use wheelchairs;

    B. Enter an injunction requiring defendants to install elevators at the Middletown Road station in such a manner as to make the station or part thereof readily accessible to and usable by individuals with disabilities to the maximum extent feasible, including individuals who use wheelchairs;

C.  Award such other additional relief as justice may require.


Dated: New York, New York
       ~~January~~, 2018
       February 14

By: _/s/ John M. Gore_
    JOHN M. GORE
    Acting Assistant Attorney General
    Civil Rights Division


    GEOFFREY S. BERMAN
    United States Attorney for the
    Southern District of New York

By: _/s/ Lara Eshkenazi_
    LARA K. ESHKENAZI
    ELLEN BLAIN
    Assistant United States Attorneys
    86 Chambers Street, 3rd Floor
    New York, New York 10007
    Telephone: (212) 637-2758/2743
    E-mail: lara.eshkenazi@usdoj.gov
            ellen.blain@usdoj.gov