UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRONX INDEPENDENT LIVING SERVICES, a nonprofit organization, DISABLED IN ACTION OF METROPOLITAN NEW YORK, a nonprofit organization, ROBERT HARDY, an individual, and RODOLFO DIAZ, an individual, et al., | No. 16 Civ. 05023 (ER) |
| Plaintiffs, | |
| -against- | |
| METROPOLITAN TRANSPORTATION AUTHORITY, a public benefit corporation, THOMAS PRENDERGAST in his official capacity as chairman and chief executive officer of the Metropolitan Transportation Authority, NEW YORK CITY TRANSIT AUTHORITY, a public benefit corporation, and VERONIQUE HAKIM in her official capacity as president of the New York City Transit Authority, | |
| Defendants. | |
| UNITED STATES OF AMERICA, | |
| Plaintiff-Intervenor, | |
| -against- | |
| METROPOLITAN TRANSPORTATION AUTHORITY And NEW YORK CITY TRANSIT AUTHORITY, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022-4834
(212) 583-9600

*Attorneys for Defendants*

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT.......................................................................................... 1

STATEMENT OF FACTS.................................................................................................. 5

      A.    The Middletown Road Station .............................................................. 5

      B.    Renovations at the Station ................................................................... 6

      C.    The FTA's Changing Interpretation of the ADA and its Regulations.................. 9

ARGUMENT ...................................................................................................................... 11

I.     49 C.F.R. § 37.43(A)(2) APPLIES TO THE 2013-2014 RENOVATIONS AT THE
      MIDDLETOWN ROAD STATION BECAUSE DEFENDANTS ALTERED A
      PRIMARY FUNCTION AREA AND ACCESS TO THAT PRIMARY
      FUNCTION AREA.................................................................................................. 10

II.    EVEN ASSUMING 49 C.F.R. § 37.43(A)(1) APPLIED TO THE 2013-2014
      RENOVATIONS AT THE MIDDLETOWN ROAD STATION, DEFENDANTS
      WOULD NOT BE REQUIRED TO INSTALL ELEVATORS AT THE STATION ...... 17

III.   THE FTA'S 2015 CIRCULAR IS NOT ENTITLED TO DEFERENCE HERE ............ 19

IV.   THE FTA'S JULY 2014 LETTER AND THE DOT'S MAY 2016 LEGAL
      OPINION ARE ALSO NOT ENTITLED TO DEFERENCE AND ARE
      INADMISSIBLE ...................................................................................................... 23

CONCLUSION................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bartlett v. N.Y.S. Bd. of Law Examiners*,
    226 F.3d 69 (2d Cir. 2000)................................................................................12

*Catskill Mountains Ch. of Trout Unlimited, Inc. v. EPA*,
    846 F.3d 492 (2d Cir. 2017)............................................................................19

*Christensen v. Harris Cnty.*,
    529 U.S. 576 (2000)........................................................................................19

*Christopher v. SmithKline Beecham Corp.*,
    567 U.S. 142 (2012)..........................................................................20, 21, 24

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*,
    635 F.3d 87 (3d Cir. 2011)........................................................................16, 17

*Griffin v. Oceanic Contractors, Inc.*,
    458 U.S. 564 (1982)........................................................................................16

*Halo v. Yale Health Plan*,
    819 F.3d 42 (2d Cir. 2016)..............................................................................19

*Quick Search, Inc. v. Miller, Rosado & Algois, LLP*,
    No. 13 CIV. 5589 (ER), 2018 WL 264111 (S.D.N.Y. Jan. 2, 2018).........................5

*Rochester-Genesee Reg. Transp. Auth. v. Hynes-Cherin*,
    531 F. Supp. 2d 494 (W.D.N.Y. 2008) .............................................................20

*Scharff v. Cnty. of Nassau*,
    No. 10 CV 4208 (DRH)(AKT), 2014 WL 2454639 (E.D.N.Y. June 2, 2014).......................18

*Segedie v. Hain Celestial Grp., Inc.*,
    No. 14-CV-5029 (NSR), 2015 WL 2168374 (S.D.N.Y. May 7, 2015).................20

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)........................................................................................19

*Torres v. Gristede's Operating Corp.*,
    628 F. Supp. 2d 447 (S.D.N.Y. 2008)..............................................................25

*Wahad v. F.B.I.*,
    179 F.R.D. 429 (S.D.N.Y. 1998) .....................................................................25

i

**Statutes**

42 U.S.C. §12102............................................................................................................12

42 U.S.C. § 12147(a) ...........................................................................................11, 13, 21

**Other Authorities**

49 C.F.R. Part 37, App. D ...............................................................................................2

49 C.F.R. § 37.43(a)(1) ........................................................................................... *passim*

49 C.F.R. § 37.43(a)(2) ........................................................................................... *passim*

49 C.F.R. § 37.43(c).................................................................................................12, 23

49 C.F.R. § 37.43(d) ...............................................................................................12, 13

49 C.F.R. § 37.43(e).......................................................................................................13

49 C.F.R. §§ 625.15, 625.17, 625.25, 625.27, 625.29 625.33 ........................................6

Fed. R. Civ. P. 56(c) ................................................................................................5, 25

Fed. R. Evid. 701 ..........................................................................................................25

Fed. R. Evid. 802 ..........................................................................................................25

H.R. REP. No. 101-485 (1990), 1990 U.S.C.C.A.N. 445...............................................12

AMERICANS WITH DISABILITIES ACT (ADA): GUIDANCE, 2015 WL 6037995
    (Nov. 4, 2015) ......................................................................................................21, 22

NONDISCRIMINATION ON THE BASIS OF DISABILITY BY PUBLIC ACCOMMODATIONS
    AND IN COMMERCIAL FACILITIES, 56 Fed. Reg. 35544, 35581 (Jul. 26, 1991)............11, 18, 22

TRANSP. FOR INDIVIDUALS WITH DISABILITIES, 56 Fed. Reg. 45584 (Sept. 6, 1991) ...................11

U.S. ACCESS BOARD TECHNICAL GUIDE, ADA SCOPING: ALTERATIONS AND
    ADDITIONS (Feb. 2014) .............................................................................................17

## PRELIMINARY STATEMENT

Plaintiffs seek a ruling that Defendants' replacement of the stairways at the Middletown Road Station triggered an obligation under 49 C.F.R. § 37.43(a)(1) to make the Station's "path of travel" readily accessible to the maximum extent feasible, without regard to expense. (*See* ECF No. 79). Such a ruling would be incorrect. Instead, it is 49 C.F.R. § 37.43(a)(2) that specifically addresses alterations -- such as the stairway replacements at issue here -- that "affect access" to primary function areas of a station. And, it is § 37.43(a)(2) that specifically addresses the circumstances in which such alterations affecting access to such primary function areas of a station require that a station's "path of travel" be made readily accessible -- expressly limiting that requirement when "the cost and scope of doing so would be disproportionate." Accordingly, this Court should deny Plaintiffs' motion for partial summary judgment, and grant Defendants' cross-motion for partial summary judgment that § 37.43(a)(2) applies to the station renovations at issue in this case.

Although Plaintiffs ask this Court to decide which one of two regulations, § 37.43(a)(1) or § 37.43(a)(2), applies to the facts of this case, the "Argument" section of Plaintiffs' brief in support of their motion does not help the Court make this decision. It does not even discuss § 37.43(a)(2), one of the two regulations their motion was supposed to address. Plaintiffs do not argue that § 37.43(a)(2) does *not* apply, nor do they analyze when § 37.43(a)(1) rather than § 37.43(a)(2) applies. Plaintiffs totally ignore § 37.43(a)(2). In arguing that § 37.43(a)(1) applies, they repeatedly argue that Defendants altered the "path of travel," a phrase appearing *only* in § 37.43(a)(2), which they do not cite. Plaintiffs' failure to address § 37.43(a)(2) and their clear disregard of the language of the two regulations is fatal to their motion, which should be denied.

As further set forth in Point I below, both §§ 37.43(a)(1) and 37.43(a)(2) concern "[a]lterations of transportation facilities" "that affect or could affect the usability" of a facility. The question as to which section applies here, therefore, is not whether an "alteration" was undertaken or whether the "usability" of the station was affected. Rather, the key question in determining which regulation applies is whether the alteration was one that "affected the use of or access to an area containing a primary function." If so, then § 37.43(a)(2) applies; if not, then § 37.43(a)(1) applies. Plaintiffs' motion does not address this question. The regulations do. And the undisputed facts are that the Middletown Road Station renovations here at issue *did* affect the use of and access to primary function areas at that Station (the mezzanine and platforms) within the meaning of § 37.43.

Under § 37.43(a)(2) where an alteration affects the "usability of or access to an area of a facility containing a primary function area" (*e.g.* ticket purchase and collection areas and train platforms as was the case here), the entity must make the "path of travel" to the primary function area "readily accessible," to the "maximum extent feasible,"[1] unless "the cost and scope of doing so would be disproportionate." 49 C.F.R. § 37.43(a)(2). This subsection plainly covers alterations made to staircases leading to and from a subway station mezzanine, where subway fares are sold and collected, and to and from a subway station platform, where riders board and disembark from subway trains. Indeed, the regulation uses the terms "access to" the "primary

---

[1] The phrase "to the maximum extent feasible" is "construed as not requiring entities to make building alterations that have little likelihood of being accomplished without removing or altering a load-bearing structural member unless the load-bearing structural member is otherwise being removed or altered as part of the alteration." 49 C.F.R. Part 37, App. D. In this action, it has been Defendants' consistent position that regardless of which provision of § 37.43(a) applies, it was technically infeasible to install elevators at the Middletown Road Station in 2013-14. This technical infeasibility provides an independent basis upon which this Court should conclude, after the completion of expert discovery, that Defendants' renovations at Middletown Road did not trigger an obligation under the ADA or its implementing regulations to install elevators. Indeed, unlike the phrase "path of travel," the phrase "to the maximum extent feasible" appears in both subsections of § 37.43(a).

function area" and the "path of travel" to the primary function area. 49 C.F.R. § 37.43(a)(2). Those were the alterations done at Middletown Road Station.

Section 37.43(a)(1), which Plaintiffs contend applies here, applies to *other* alterations to areas of a facility *not* containing a primary function (or access to a primary function area) that affect or could affect the usability of the station. Under § 37.43(a)(1), "[w]hen an entity alters an existing facility . . . in a way that affects or could affect the usability of the facility," it must "make the alterations . . . in such a manner, to the maximum extent feasible, that the altered portions of the facility are readily accessible." 49 C.F.R. § 37.43(a)(1). Section 37.43(a)(1) does not by its terms cover alterations, such as those at the Middletown Road Station, which affect "access to" a "primary function" area or the "path of travel" to the altered area.

As set forth in Point II below, even assuming, without conceding, that § 37.43(a)(1) did apply to Defendants' replacement of four staircases at the Middletown Road Station, that subsection does not address making an entire "path of travel" readily accessible—a matter expressly covered under § 37.43(a)(2) -- and, accordingly, would not have triggered a requirement that Defendants, by virtue of replacing stairs, must install elevators. Rather, § 37.43(a)(1) requires that when a public transportation provider makes alterations to specific elements or components of an existing facility it must do so in a manner that "*the altered portions of the facility are readily accessible,*" to the maximum extent feasible. 49 C.F.R. § 37.43(a)(1) (emphasis added). Thus, when a public transportation provider alters or replaces a set of stairs at a train station it must make those stairs -- *i.e.* "the altered portion[ ] of the facility" -- readily accessible, by ensuring that the height of each riser and the height of the railings are installed in accordance with the ADA-compliant specifications.

Nothing in the statute or the regulations provides that every time a public entity replaces an existing staircase or a significant number of stair treads or risers costing thousands of dollars it must (as Plaintiffs contend) install elevators costing millions of dollars. Indeed, like § 37.43(a)(2), § 37.43(a)(1) contains its own proportionality limitation. It requires that an "altered portion of the facility" be installed so as to meet accessibility standards governing such portion; it does not require that the entire facility or its "path of travel" to primary function areas, be made readily accessible without regard to expense. Section 37.43(a)(2)'s cost proportionality limitation, and § 37.43(a)(1)'s "altered portion" proportionality limitation, both evidence Congress' intent to balance the economic burdens the Americans with Disabilities Act ("ADA") would otherwise impose on alterations to public accommodations. Plaintiffs' one-sided misreading flouts Congress' intent and yields a ridiculous result.

Points III and IV below addresses Plaintiffs' heavy reliance on a 2015 Federal Transit Administration ("FTA") Circular (P. Mem. 12-14),[2] a July 2014 FTA letter concerning the Middletown Road Station (*Id.* at 15) and a May 2016 Department of Transportation ("DOT") legal opinion (*Id.* at 16). Such reliance is misplaced. The FTA Circular, not issued until November 2015, more than eighteen months after Defendants completed the 2013-14 renovations of the Middletown Road Station, cannot fairly be applied retroactively to this case. Moreover, the Circular reinterpreted the regulations here at issue in a manner inconsistent with the unambiguous language of the ADA and the regulations. Insofar as the FTA Circular is at odds with the statute, the regulations, and the legislative history, it is not entitled to deference in this case. The 2015 FTA Circular also is not entitled to deference because it is inconsistent with the FTA's previous interpretations of the regulations, which for twenty-five years did not require

---

[2] Citations to "P. Mem." refer to the Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment dated April 24, 2018 (ECF No. 80).

installation of elevators in numerous station renovations that included the in-kind replacement of one or more staircases at numerous subway stations. Also misplaced is Plaintiffs' reliance on a July 2014 letter and the DOT 2016 Legal Opinion (P. Mem. 16). Those documents and the determinations/analysis they contain are legal conclusions and hearsay, which are not admissible on Plaintiffs' motion for summary judgment. Fed. R. Civ. P. 56(c)(2). More importantly, like the Circular, the 2014 FTA determination and the 2016 Legal Opinion are not supported by a plain reading of the statute and the regulations and thus are not entitled to deference. Moreover, like the Circular, they too were issued after Defendants completed their renovations to the Middletown Road Station, and thus cannot fairly be applied to this case.

In accordance with the plain language of 49 C.F.R. § 37.43(a)(2), this Court should deny Plaintiffs' motion for partial summary judgment and find that Defendants' renovations to the platforms, mezzanine and stairs at the Middletown Road Station triggered a requirement to make the "path of travel" to the platforms and mezzanine "readily accessible," to the "maximum extent feasible," unless "the cost and scope of doing so would be disproportionate."

## STATEMENT OF FACTS[3]

### A.   The Middletown Road Station.

The Middletown Road Subway Station ("Station") is an elevated station situated at the intersection of Westchester Avenue, Middletown Road and Appleton Avenue in the Pelham Park

---

[3] Plaintiffs' Memorandum of Law contains a two page section entitled "People Served By The 6 Line Have a Critical Need for Accessible Stations." (P. Mem. 3-5). That section is devoid of references or citations to admissible evidence. Moreover, that section contains information unrelated to Plaintiffs' motion for partial summary judgment or the subject matter of this lawsuit. This lawsuit relates to a single subway station in the Bronx, and whether the ADA required Defendants to install elevators at that station when they undertook renovations there in 2013-2014. Plaintiffs' needless and unsupported section should be disregarded. *See* Fed. R. Civ. P. 56(c); *Quick Search, Inc. v. Miller, Rosado & Algois, LLP*, No. 13 CIV. 5589 (ER), 2018 WL 264111, at *1 n. 4 (S.D.N.Y. Jan. 2, 2018) (Ramos, J.) (declining to consider the plaintiffs' "unsupported assertions" where "the overwhelming majority of Plaintiffs' memoranda of law . . . [did] do not contain a single citation to the record").

neighborhood of the Bronx, New York. (D. 56.1 ¶ 23).[4] The Station was built in or about 1919, and opened to the public in 1920. (*Id*. ¶ 24). It currently provides "6" train subway service on the Pelham (IRT) Line. (*Id*.) Since that Station was built nearly 100 years ago, access to the subway has been by one of two sets of stairs on either side of Westchester Avenue. (*Id*. ¶ 25). Those stairs lead to a mezzanine at the center of the station that is hung from the girders supporting the tracks. (*Id*.) In the mezzanine, passengers can purchase fares and must pass through turnstiles or swinging doors in order to access the tracks above. (*Id*.). From there, one of two sets of stairs leads to the outbound or inbound platforms on either side of the subway tracks above. (*Id*.)

**B.    Renovations at the Station.**

In or about 2003, NYCTA began planning for renovations to be completed at the Middletown Road Station to bring the station into a "State of Good Repair"[5] ("SGR"). (*Id*. ¶ 26). Prior to 2003, the Station condition had been designated "fair" based on a station condition survey, which indicated that the structure was functioning as designed, but which identified some minor deficiencies to be addressed. (*Id*. ¶ 27). Notwithstanding the need for a measure of repair and rehabilitation to meet federal SGR requirements, the station remained safe, open and usable to the public until the renovation work began in October of 2013. (*Id*. ¶ 27). The planned renovations to the Middletown Road Station were part of a larger project to renovate nine elevated stations on the Pelham Line between the Whitlock Avenue Station at the southern end, and Buhre Avenue Station at the northern end of the line.[6] (*Id*. ¶ 28). The project design phase was completed by an NYCTA design team in 2007, and the design documents, as well as the Project Master Plan, were provided to the Federal Transit Administration ("FTA") in November

---

[4] Citations to "D. 56.1" refer to Defendants' Response to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts and Defendants' Rule 56.1 Statement of Undisputed Material Facts, dated June 18, 2018.
[5] The DOT requires that all public transportation providers maintain their station in a "state of good repair." *See generally,* 49 C.F.R. §§ 625.15, 625.17, 625.25, 625.27, 625.29 625.33.
[6] A tenth station, Pelham Bay Park Station, also was part of the larger renovation project. That station, the terminal station on the Pelham Line, already had elevators and had a different scope of work than of the other nine stations.

of 2007, in connection with Defendants' request for federal financial assistance for the project. (*Id.* ¶ 29). Defendants also discussed with the FTA the scope of the project, including both the scope of the repair work to be done and planned accessibility improvements at the Middletown Road Station, during numerous quarterly meetings, triennial reviews and program meetings, between 2007 and 2012. (*Id.*)

Based on Defendants' understanding of their ADA obligations, as then unchallenged by the FTA, Defendants did not include elevators in the design of any of the nine elevated stations between Whitlock Avenue Station and Buhre Avenue Station on the Pelham Line, since the cost of installing elevators would have been disproportionate to the cost of the project (*i.e.* the costs of elevators would have exceeded 20% of the relevant cost of alterations to the primary function area or to access thereto). (*Id.* ¶ 30). Indeed, the Project Master Plans for the Pelham Line projects, which included the scope of work for the Middletown Road Station, was provided to the FTA for its review and pre-award approval in 2007. (*Id.* ¶ 31). The scope of the planned Middletown Road Station work reflected progressive accessibility requirements as mandated by the ADA, but, consistent with Defendants' understanding of their obligations, did not provide for the installation of elevators.[7] (*Id.*). The scope of work included in the Project Master Plans for the other elevated Pelham Line stations reflected progressive accessibility efforts similar to those planned for the Middletown Road Station, and also did not include elevator installations. (*Id.* ¶ 32). Each of those Project Master Plan scopes were submitted to the FTA in connection with Defendants' request for federal funding of the project, and each included specific, express,

---

[7] The term "progressive accessibility requirements" refers to those accessibility modifications such as the installation of Braille signage and tactile platform edges which are required by the ADA to make the station accessible where elevators cannot be installed because the cost of such installation is disproportionate and/or because the installation would be technically infeasible. *See* Exhibit A attached to the June 18, 2018 Declaration of Gricelda Cespedes submitted herewith, at D000186 and D000193.

language advising the FTA that elevators were not being installed as part of the planned work. (*Id.*)

In or about 2008, Defendants withdrew their request for funding for four of the nine Pelham Line stations (the northernmost stations on the line), including the Middletown Road Station, and shifted the four removed stations from the Defendants' 2005-09 Capital Plan to Defendants' 2010-2014 Capital Plan, due to Defendants' shifting budgetary priorities and limited financial resources. (*Id.* ¶ 33). Although the Project Master Plans reflected Defendants' understanding that elevator installations were not required by the ADA or its implementing regulations under the scope of work for the Pelham Line projects, and that these projects would in fact not include such installation, the remaining five southernmost stations (together "Pelham I") remained in the grant request and were fully funded by the FTA. (*Id.* ¶ 34). The five-station Pelham I project was awarded to a contractor in August of 2009, and construction on the entire project was substantially completed, without elevators, in December of 2011. (*Id.*). As part of the shift of the four northernmost stations from one Capital Plan to another, Defendants determined in August of 2011 that they would re-scope the renovations at the four removed stations, including the Middletown Road Station (together "Pelham II"), to reduce the cost of the station work. (*Id.* ¶ 35). In NYCTA's terminology, the project was re-scoped from a "rehabilitation project" to a more limited "renewal project." (*Id.*).

In March of 2012, Defendants resubmitted to the FTA their request for federal funding of the Pelham II stations, including the Middletown Road Station Renewal Project. (*Id.* ¶ 36). The revised scope of work for the Middletown Road Station Renewal Project called for:

a.    the repair/replacement of structural steel framing for the station mezzanine;
b.    the replacement of floors, walls, ceilings, facilities, and equipment, as needed;
c.    the replacement of track thorough-span structure (station mezzanine roof);
d.    the replacement of street and platform stairs;

       e.       reconstruction of the platform edges, including installation of rubbing boards and new ADA boarding areas;

       f.       the replacement/repair of concrete platforms;

       g.       the replacement of platform and street stairs' canopies;

       h.       the replacement of platform windscreens and railings;

       i.       the replacement of corroded steel throughout the station;

       j.       painting;

       k.       installation of new mezzanine lighting;

       l.       incorporation of help points and fire alarm systems;

       m.       installation of bird deterrent systems;

       n.       incorporation of artwork in the station; and

       o.       installation of new platform lighting an speakers.

(*Id.* ¶ 37).

The Pelham II project was awarded to Yonkers Construction Company on May 21, 2013 through competitive bidding, and construction at the Middletown Road Station was performed between October 5, 2013 and May 4, 2014, during which time the station was closed.[8] (*Id.* ¶ 38). The bid price by the general contractor that performed the renovations at the Middletown Road Station was $16,775,855. (*Id.* ¶ 39). Although the scope of work for each of the four stations in the Pelham II project was identical, and none provided for elevator access, the FTA chose to fund only three of the four stations, withholding federal funding for only the Middletown Road Station Renewal Project. (D. 56.1 ¶ 40).

### C.    The FTA's Changing Interpretation of the ADA and its Regulations.

Prior to 2011, the federal government, through the FTA, routinely funded Defendants' renovation projects on both elevated and underground stations, many of which projects included stair repair work and the in-kind replacement of staircases without associated elevator installations. (*Id.* ¶ 41). This led NYCTA to believe that the FTA and Defendants shared an understanding that the installation of elevators was not required where the costs of such installation would be disproportionate to the cost of the alteration to the primary function area.

---

[8] The station remained open at all other times during the planning of the renovations at the Middletown Road Station. (*Id.*)

(*Id.*) Indeed, in 2009, the FTA provided federal funding for each of the five stations on the Pelham Line I project, which did not include planned elevator installations at those stations. (*Id.* ¶ 42). The FTA also provided funding for numerous other projects throughout the New York City Subway System where Defendants replaced one or more staircases in-kind but did not install an elevator. (*Id.* ¶ 43). Between 1992 and 2011, although the NYCTA replaced in-kind or otherwise repaired 640 staircases at 56 stations, including at the five stations in the Pelham I project, it was not required by the FTA to install elevators based on its stair work. (*Id.*). Moreover, between November of 2007, when Defendants submitted plans to renovate the Pelham Line to the FTA, and October of 2012, the FTA did not raise any concerns whatsoever with regard to Defendants' plans to renovate the Pelham Line stations without installing elevators. (*Id.* ¶ 44).

At least three elevators would be required to be installed at the Middletown Road Station to make the mezzanine and Station platforms vertically accessible to persons with mobility disabilities. (*Id.* ¶ 45). NYCTA estimates that the installation of those elevators at an elevated subway station like the Middletown Road Station would cost roughly $17 million (estimated in 2014 dollars) and $30 million (estimated in 2017 dollars). (*Id.*). By stark contrast, the replacement in-kind of a single staircase at an elevated subway station is estimated to cost roughly $350,000. (*Id.* ¶ 46). Prior to this matter, the FTA had never stated to Defendants must install elevators when they merely replaced a station staircase in kind; nor withheld federal funding from Defendants based on an alleged requirement to install elevators when Defendants replaced a staircase. (*Id.* ¶ 47).

10

## ARGUMENT

**I.     49 C.F.R. § 37.43(a)(2) APPLIES TO THE 2013-2014 RENOVATIONS AT THE MIDDLETOWN ROAD STATION BECAUSE DEFENDANTS ALTERED A PRIMARY FUNCTION AREA AND ACCESS TO THAT PRIMARY FUNCTION AREA.**

The statute and regulations at issue here are clear and unambiguous. The ADA provides "[w]ith respect to alterations of an existing facility or part thereof used in the provision of designated public transportation services that affect or could affect the usability of the facility or part thereof, it shall be considered discrimination . . . for a public entity to fail to make such alterations (or to ensure that the alterations are made) in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12147(a). However, that same section also provides that "[w]here the public entity is undertaking an alteration that affects or could affect usability of *or access to an area of the facility containing a primary function*, the entity shall make the alterations in such a manner that, to the maximum extent feasible, the *path of travel to the altered area* and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities . . . *where such alterations to the path of travel* or the bathrooms, telephones, and drinking fountains serving the altered area *are not disproportionate to the overall alterations in terms of cost and scope.*" 42 U.S.C. § 12147(a).

Thus, "[i]t is only when an alteration affects access to or usability of an area containing a primary function, as opposed to other areas [of the transportation facility] . . . that the path of travel to the altered area must be made accessible." *See* NONDISCRIMINATION ON THE BASIS OF DISABILITY BY PUBLIC ACCOMMODATIONS AND IN COMMERCIAL FACILITIES, 56 Fed. Reg. 35544, 35582 (Jul. 26, 1991).[9] "This approach appropriately reflects the intent of Congress to provide

---

[9] The Department of Justice's ADA Title III Regulations are incorporated by reference into the DOT's ADA Title II regulations. *See* TRANSP. FOR INDIVIDUALS WITH DISABILITIES, 56 Fed. Reg. 45584, 45588, 45593 (Sept. 6, 1991)

access for individuals with disabilities without causing economic hardship for the covered public accommodations." *Id*. The "disproportionality concept recognizes that, in some circumstances, achieving an accessible path of travel . . . may be sufficiently significant in terms of cost or scope in comparison to the remainder of the alteration being undertaken as to render this requirement unreasonable." H.R. REP. No. 101-485 at 64 (1990), 1990 U.S.C.C.A.N. 445, 487. Indeed, "it would clearly be disproportionate to require a public accommodation to double the cost of a planned alteration." *Id*.

The DOT's regulations recite the ADA statutory standards in nearly identical terms (*see generally*, 49 C.F.R. § 37.43) and define the key terms. The term "primary function" is defined as the "major activity for which the facility is intended," including the "ticket purchase and collection areas, passenger waiting areas, [and] train or bus platforms." 49 C.F.R. § 37.43(c). The phrase "path of travel" is defined in the regulations to include the "continuous, unobstructed way of pedestrian passage by means of which the altered area may be approached, entered, and exited, and which connects the altered area with an exterior approach (including sidewalks, parking areas, and streets), an entrance to the facility, and other parts of the facility." 49 C.F.R. § 37.43(d).[10] With respect to disproportionality, the regulations provide that "[a]lterations made to

("most, if not all, transportation providers covered by part 37 also are covered by DOJ regulations either under title II or title III of the ADA. We have worked closely with the DOJ to ensure consistency among our regulations . . . the provisions follow closely those adopted by the DOJ, in its regulations implementing title III of the ADA"); *see also, Bartlett v. N.Y.S. Bd. of Law Examiners*, 226 F.3d 69, 78 n. 2 (2d Cir. 2000) ("title II and title III of the ADA impose largely the same requirements").

[10] The United States of America, in its April 25, 2018 letter supporting Plaintiffs' motion for partial summary judgment argues, without citation to any statute, regulation or legislative history, that "the DOT did not include staircases in its definition of an accessible 'path of travel' because a staircase, can never be accessible to individuals who use wheelchairs." (ECF No. 83 p. 4). There is no support for the government's *ipse dixit* assertion. As an initial matter, the protection offered by the ADA is not limited to only individuals with mobility impairments, but rather applies to those with any number of disabilities. *See* 42 U.S.C. §12102 (defining the term disability). In fact, the Department of Justice's own ADA Accessibility Guidelines address how staircases are to be made accessible to disabled individuals, reflecting the intention to improve accessibility for those who can use the stairs. *See* ADA Accessibility Guidelines § 4.9. Moreover, the plain language of the regulation indicates that stairways are part of the path of travel. The regulations define the "path of travel" as the "the continuous, unobstructed way of pedestrian passage by means of which the altered area may be approached, entered, and exited, and which connects the altered

provide an accessible path of travel to the altered area will be deemed disproportionate to the overall alteration when the cost exceeds 20% of the cost of the alteration to the primary function area (without regard to the costs of accessibility modifications)." 49 C.F.R. § 37.43(e)(1).

Neither the statute nor the regulations triggered an obligation on the part of Defendants to install elevators to provide an accessible path of travel at the Middletown Road Station during the station renewal project that was performed in 2013-2014 because the cost of doing so would have exceeded 20% of the relevant cost of renovations to the primary function areas. Defendants' renovations included alterations to the Station's mezzanine, where subway fares are sold and collected, and to the station's platforms, where riders board and disembark from subway trains. (D. 56.1 ¶¶ 25, 37). Defendants' renovations also included the replacement in-kind of two sets of stairs from the street to the mezzanine and two sets of stairs from the mezzanine to the platforms. (*Id.*).[11] Insofar as these renovations altered an area of the facility containing a primary function, and in the case of the stair replacements affected access to an area containing a primary function, Defendants were required to make the alterations in such a manner that the "path of travel" to the altered area was readily accessible, unless the cost and scope of doing so was disproportionate, *i.e.*, would exceed 20% of the cost of the alteration to the primary function areas. 42 U.S.C. § 12147(a); 49 C.F.R. §§ 37.43(a)(2), (e). Because the costs of installing elevators at Middletown Road Station is estimated to range between $17 million and $30 million (more than the bid price for the renovations undertaken), (D. 56.1 ¶¶ 39, 45), the cost of making the path of travel accessible by elevator plainly was disproportionate.

Accordingly, pursuant to the statute and the regulations, Defendants were not required to

---

area with an exterior approach." 49 C.F.R. § 37.43(d). At the Middletown Road Station the stairways are clearly part of the "continuous unobstructed way of pedestrian passage by means of which the altered area may be approached, entered, and exited." Indeed, they also are the only pedestrian path from the sidewalks to the mezzanine and from the mezzanine to the platforms, and therefore, the only means of entering and exiting the station. (D. 56.1 ¶ 25).

[11] An in-kind stairway replacement merely is a more cost effective means of repairing that stairway. (D. 56.1 ¶ 18).

install elevators at the Middletown Road Station during the 2013-2014 Station Renewal Project. This is consistent with the plain language of the statute, the regulations and Congress' express intent to ensure that the costs of making an altered facility accessible to the disabled do not impose an undue burden on public entities such as the NYCTA.

Plaintiffs, without addressing the application of §§ 37.43(a)(2) and (e), and the disproportionality principle contained therein, argue that Defendants' "demolition and reconstruction of existing stairways at Middletown Road station *altered the Station's path of travel in ways affecting usability*," "thereby triggering an obligation" under 49 C.F.R. § 37.43(a)(1) to make "*that altered path*" readily accessible to the "maximum extent feasible." (*See* P. Notice of Motion, 1-2; P. Mem. 2, 16-22) (emphasis added). As an initial matter, Plaintiffs distort the language of the two sub-sections of § 37.43(a). The term "path of travel" does not appear in 49 C.F.R. § 37.43(a)(1); it only appears in § 37.43(a)(2), which is the sub-section that expressly addresses the circumstances in which the path of travel must be made accessible. The latter sub-section states that the path of travel must be made accessible where there has been an alteration either to the primary function area *or* affecting access to the primary function area, when provision of an accessible path of travel is not disproportionately costly. There is simply no reference to alterations to "the path of travel" in § 37.43(a)(1). Plaintiffs predicate their motion calling for a ruling applying § 37.43(a)(1) here based on language (the "path of travel") that does not even appear in that sub-section.

In so doing they ignore the regulatory distinction between the two sub-sections. As is clear from a plain reading of the regulation, § 37.43(a)(2) applies to an "alteration that affects or could affect the usability of or access to an area of a facility containing a primary function . . . ." Subject to the disproportionality test, such alterations affecting access to or usability of a primary

14

function area trigger an obligation to make the "path of travel" to the primary function area accessible.  Section 37.43(a)(1) applies to alterations to other elements affecting usability, omitting any reference to the accessibility of the "path of travel" or to alterations affecting "access to a primary function area."  Thus, § 37.43(a)(2), and not § 37.43(a)(1), applies to the alterations made here, to the primary function areas (the Station's mezzanine and platforms) and to the stairways replaced at the Middletown Road Station, which provide "access to" these primary function areas.

Plaintiffs' construction would override Congress' express language barring imposition of disproportionate costs on public transportation providers when they alter transportation facilities. Congress, in addressing the costs of providing "path of travel" accessibility, wrote specific protective disproportionality language into § 37.43(a)(2), a section which clearly encompasses, among other things, alterations to or affecting access to a station's primary function areas. It would be wholly illogical to conclude that Congress, at the same time, intended those cost disproportionality protections for path of travel accessibility improvements to be ignored whenever a public transportation provider performed relatively low cost stairwell replacements, alterations which clearly affect access to primary function areas. Yet, under Plaintiffs' tortured reading of the statute and § 37.43(a)(1), Defendants would be required to install elevators at a subway station, without regard to cost, each time they replaced a staircase in-kind at a station, but would not be required to install elevators at the same station when altering a station's platforms and mezzanine—*i.e.* "major structural alterations"— if the costs of such installation were disproportionate.

At Middletown Road Station, under Plaintiffs' erroneous interpretation, Defendants would have needed to install elevators regardless of the expense (here, estimated to cost between

$17 million and $30 million), based upon Defendants' decision to replace a single staircase (at a cost of approximately $350,000) -- whether or not Defendants did any other work at the Station. (D. 56.1 ¶ 45). By contrast, Plaintiffs apparently concede that Defendants would not have needed to spend any money installing elevators at the Station, based on the extensive work performed in the Station's mezzanine (a primary function area), because the cost of installing elevators at the Station is clearly more than 20% of the cost of the work performed in primary function areas. (*Id.* ¶¶ 39, 45).

Plaintiffs' reading of the regulation is absurd and, as such, should be rejected. It is a fundamental cannon of statutory interpretation that a construction which leads to absurd or unreasonably harsh results is disfavored. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available"). There is a much more logical interpretation of the statute and regulations, consistent with legislative intent: Section 37.43(a)(2), and its disproportionality limitation, applies to the replacement of staircases because those staircases provide "access to" a primary function area. Therefore, Defendants would not have needed to spend at least $17 million in 2014 to install elevators at the Middletown Road Station because they spent approximately $350,000 to replace a single staircase. Plaintiffs' misinterpretation of the statute and regulation, which wholly disregards disproportionality by requiring a public entity making minor alterations to staircases to install elevators regardless of expense, has no logical basis, disregards the statutory and regulatory language addressing "path of travel" accessibility, and is inconsistent with the legislative intent.[12]

---

[12] Plaintiffs' reliance on *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87 (3d Cir. 2011) ("SEPTA") is unpersuasive. First, the Court there did not address the question of whether § 37.43(a)(1) *or* (a)(2) applied to the

Therefore, based on the plain language of the statute and the regulations, and the clear intent of Congress to avoid imposing economic hardships, § 37.43(a)(2) applies to Defendants' renovations to the mezzanine, platform and staircases at the Middletown Road Station, and Defendants were required to make the "path of travel" to those areas accessible only to the extent the accessibility alterations were feasible and not disproportionate in cost. Accordingly Plaintiffs' motion should be denied and Defendants' cross-motion should be granted.

## II.    EVEN ASSUMING 49 C.F.R. § 37.43(a)(1) APPLIED TO THE 2013-2014 RENOVATIONS AT THE MIDDLETOWN ROAD STATION, DEFENDANTS WOULD NOT BE REQUIRED TO INSTALL ELEVATORS AT THE STATION.

Under § 37.43(a)(1), "[w]hen an entity alters an existing facility . . . in a way that affects or could affect the usability of the facility," it must "make the alterations . . . in such a manner, to the maximum extent feasible, that *the altered portions of the facility are readily accessible*." 49 C.F.R. § 37.43(a)(1) (emphasis added). This regulatory language expressly limits the accessibility requirement it imposes to the "altered portion" of the facility. Unlike § 37.43(a)(2), § 37.43(a)(1) does not refer to a requirement that the entire "path of travel" be rendered accessible, but rather, requires proportional accessibility improvements element by element.

Section 37.43(a)(1) thus requires that when an entity alters a component or element of a facility it make that component or element of the facility (*i.e.,* the altered portion of the facility) readily accessible. *See* U.S. ACCESS BOARD TECHNICAL GUIDE, ADA SCOPING: ALTERATIONS AND ADDITIONS at § 202.3 ("Alterations") (Feb. 2014), ("If alterations are limited only to

renovations at issue. Second, unlike this case, the defendant in SEPTA argued that the renovations it undertook should not be considered "alterations" within the definition of the regulations. *Id.* at 93. Here, Defendants concede that they "altered" portions of the Middletown Road Station, but argue that Defendants' alteration or replacement of staircases within the Station did not trigger an obligation to install elevators, because the installation of elevators would exceed 20% of the costs of altering the primary function area. Finally, in SEPTA, the defendant replaced a staircase "which had become unusable," and "an inoperative escalator." *Id*. at 90. Although the stairs at Middletown Road needed repair they were at no time "unusable." (D. 56.1 ¶¶ 27, 38). In fact, the station remained open and fully operable for a ten year period between when planning for the station renovation began (2003) and when construction began (2013). (*Id.*)

elements in a room or space, then the standards apply only to the elements altered. Similarly, where spaces are altered, the standards apply to those spaces that are altered . . . An accessible route to stories and mezzanines is required in alterations (or additions) where stairs or escalators are added where none existed previously").[13]

Section 37.43(a)(1) does not require that an entity make an *entire* facility, nor the path of travel within a facility, accessible when it alters only an element or component of the facility, although Plaintiffs' construction of this regulation would dictate such a result. Therefore, even assuming § 37.43(a)(1), rather than § 37.43(a)(2) applies to Defendants' in-kind replacement of the staircases at the Middletown Road Station, that Section would require that the staircases—*i.e.* the altered portion of the facility—be altered in such a manner as to be readily accessible. Such accessibility may be achieved on a staircase by complying with the ADA Accessibility Guidelines ("ADAAG"). *See* NONDISCRIMINATION ON THE BASIS OF DISABILITY BY PUBLIC ACCOMMODATIONS AND IN COMMERCIAL FACILITIES, 56 Fed. Reg. 35544, 35581 (Jul. 26, 1991) ("If the alteration is to an area . . . that is not an area of the facility that contains a primary function, that area must comply with ADAAG. It is only when an alteration affects access to or usability of an area containing a primary function, as opposed to other areas or the elements . . . that the path of travel to the altered area must be made accessible").

Thus under § 37.43(a)(1), when Defendants replaced the staircases at the Middletown Road Station, they were required to ensure that "all steps" on the new staircase had "uniform riser heights and uniform tread widths" and that the handrails complied with size and spacing requirements. *See* ADAAG §§ 4.9, 4.26.2. Plaintiffs' interpretation of § 37.43(a)(1) as requiring

---

[13] "The Access Board is an independent federal agency that is directed to, *inter alia*, 'develop advisory information for, and provide appropriate technical assistance to, individuals or entities with rights or duties under regulations prescribed pursuant to . . . [T]itle II [of the ADA] . . . and establish and maintain "minimum guidelines and requirements for the standards issued pursuant to [T]itle[ ] II.'" *Scharff v. Cnty. of Nassau*, No. 10 CV 4208 (DRH)(AKT), 2014 WL 2454639, at *12 (E.D.N.Y. June 2, 2014).

Defendants to make an entire facility accessible by installing elevators each time Defendants replace a staircase is inconsistent with the plain language of the statute and the regulations, as well as with Congress' intent to limit the economic burdens to be imposed on public accommodations. Straightforwardly, § 37.43(a)(1) concerns alterations to existing portions of a facility, and requires that the "altered portions" be made accessible. It does not, by its terms, require the installation of new elements or new portions of a facility. Thus, to the extent § 37.43(a)(1) applies to Defendants' in-kind replacement of staircases at the Middletown Road Station, it required that the staircases be made accessible, to the maximum extent feasible, in the manner set forth in the ADAAG.

## III.   THE FTA'S 2015 CIRCULAR IS NOT ENTITLED TO DEFERENCE HERE.

Plaintiffs' reliance on a 2015 FTA Circular is misplaced. The FTA Circular, which was issued more than 18 months after Defendants completed construction at the Middletown Road Station, is not entitled to deference here. It is well settled that interpretations such as those in policy statements, agency manuals, and enforcement guidelines, "lack the force of law," and are entitled to deference only to the extent that those documents interpret ambiguous regulatory language and have the "power to persuade." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587-88 (2000); *Catskill Mountains Ch. of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 509 (2d Cir. 2017) (*Skidmore* deference only applicable if interpreted language is ambiguous); *Halo v. Yale Health Plan*, 819 F.3d 42, 53 (2d Cir. 2016) ("*Auer* deference is warranted only when the language of the regulation is ambiguous"). The deference, if any, accorded to a particular interpretive guidance "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

"Deference is . . . inappropriate . . . when the agency's interpretation is 'plainly erroneous or inconsistent with the regulation." and "when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012). For example, "[t]his might occur when the agency's interpretation conflicts with a prior interpretation." *Id.; see also Segedie v. Hain Celestial Grp., Inc.*, No. 14-CV-5029 (NSR), 2015 WL 2168374, at *9 (S.D.N.Y. May 7, 2015) ("an agency interpretation is entitled to less deference where, as here, it has been inconsistent over time"); *Rochester-Genesee Reg. Transp. Auth. v. Hynes-Cherin*, 531 F. Supp. 2d 494, 507 (W.D.N.Y. 2008) (FTA's decision "arbitrary" where "aspects of FTA's decision appear[ed] to be inconsistent with its own past rulings" and the FTA "failed to explain its reasons for departing from the standards and reasoning applied in those prior decisions").

In *Christopher*, the U.S. Supreme Court declined to defer to a Department of Labor determination concerning an overtime exemption where the "Petitioners invoke[d] the [Department's] interpretation . . . to impose potentially massive liability on respondent for conduct that occurred well before that interpretation was announced." 567 U.S. at 155-56. In so holding, the Court observed: "[t]o defer to the agency's interpretation in this circumstance would seriously undermine the principle that agencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires' to avoid 'the kind of 'unfair surprise' against which our cases have long warned.'" *Id.* at 156. Indeed, there, as here, the federal department "never initiated any enforcement actions or otherwise suggested that it thought the industry was acting unlawfully," despite "the industry's decade long practice." *Id.* at 157. According to the Court, "[i]t is one thing to expect regulated parties to conform their conduct to an agency's interpretations once the agency announces them; it is quite another to require regulated parties to

divine the agency's interpretations in advance." *Id.* at 158-59

Here, the FTA Circular is not entitled to deference because the statute and the regulations, which largely mirror the statute, are clear and unambiguous. As argued above, a plain reading of both the statute and the regulations leads to the conclusion that where an alteration is to an area containing a primary function, or affects access to a primary function area, a public transportation provider must make the "path of travel" to the altered area accessible to the maximum extent feasible, unless the cost of doing so would be disproportionate. *See* 42 U.S.C. § 12147(a); 49 C.F.R. § 37.43(a). Section 37.43(a)(2)'s reference to the "path of travel" and "access to" the primary function area make clear that § 37.43(a)(2), and not § 37.43(a)(1) applies when an entity replaces a staircase.

Even if the statute and regulations were somehow considered ambiguous, the FTA Circular would not be entitled to deference because it is inconsistent with the FTA's prior positions, (*Christopher*, 567 U.S. at 155), and because it yields absurd results not intended by Congress. Unlike the other provisions of the FTA Circular, each of which begins with a "Requirement" paragraph identifying the statutory or regulatory provisions being interpreted, Section 3.4.3 of the Circular, which Plaintiffs cite in support of their argument, contains no such "Requirement" provision. *Compare* AMERICANS WITH DISABILITIES ACT (ADA): GUIDANCE, 2015 WL 6037995, at §§ 3.4.1 - 3.4.2, 3.4.4 - 3.4.6 (Nov. 4, 2015) ("FTA Circular") with *Id. at* § 3.4.3. Instead, the FTA in Section 3.4.3 of the Circular incorrectly summarizes § 37.43(a)(1) as requiring "that the altered *area* be accessible to and usable by person with disabilities." *Id.* at § 3.4.3 (emphasis added). Section 37.43(a)(1), however, contains no such requirement. Instead, the regulation requires that the entity ensure "the altered *portions* of the facility are readily accessible," a far narrower construction. 49 C.F.R. 37.43(a)(1) (emphasis added). Based on its

incorrect reading of the regulations, the FTA concluded that "when a transit agency undertakes a station renovation project that includes replacing the staircases leading to and from the station platform, resurfacing concrete staircases, replacing a significant number of stair treads . . . the end result must be an accessible station entrance," which "[i]n most cases . . . will involve the installation of elevators." FTA Circular at § 3.4.3.

Further, Section 3.4.3 of the FTA's Circular is internally inconsistent, and for that reason also not entitled to deference. The FTA, by way of example, suggests that "when a transit agency alters a sidewalk, it must include curb ramps"—*i.e.* the transit agency must make the altered portion or component accessible. *Id.* The FTA does not suggest that "when a transit agency alters a sidewalk" it must install elevators merely because the sidewalk is part of the "path of travel." Yet, with respect to stairways, the FTA inconsistently argues that when a transit agency undertakes a station renovation project that includes replacing the staircases leading to and from the station platform . . . the end result must be an accessible station entrance," which "in most cases will involve installation of elevators." *Id.* In the FTA's first example (the sidewalks) the FTA merely requires that the altered component (the sidewalks) be made accessible. In the second example (the stairways), however, the FTA inexplicably argues that a whole new component must be installed (elevators). Nothing in the statute, regulations or legislative history, however, suggests that when an entity alters a staircase it must make an "entrance" accessible by installing an entirely new means of vertical access. On the contrary, the statute and regulations are clear that when a staircase is the "altered portion" of the facility, the staircase itself must be made accessible by compliance with the ADAAG. NONDISCRIMINATION ON THE BASIS OF DISABILITY BY PUBLIC ACCOMMODATIONS AND IN COMMERCIAL FACILITIES, 56 Fed. Reg. 35544, 35581 (Jul. 26, 1991). The FTA implicitly endorses this reading of the regulation by its sidewalk

example. The FTA's use of the terms "staircase" and "entrance" as interchangeable synonyms for each other is incorrect and unsupportable. Moreover, the FTA's interpretation ignores the clear legislative intent to limit the potential economic burdens of making an existing path of travel accessible.

The FTA's interpretation of the regulations as set forth in Section 3.4.3 of the Circular also ignores the plain meaning of § 37.43(a)(2). Section 37.43(a)(2) expressly covers alterations that affect "access to an area of a facility containing a primary function," such as a station platform. 49 C.F.R. § 37.43(a)(2). The regulations include a station platform within the definition of a "primary function" area. 49 C.FR. § 37.43(c). The FTA through its Circular, however, inexplicably argues, without citation to the regulations, that § 37.43(a)(1), rather than § 37.43(a)(2), applies, when a transit agency "replac[es] the staircase leading to and from the station platform." FTA Circular § 3.4.3. The position taken by the FTA in the Circular simply cannot be reconciled with the plain language of the regulations.

Finally, FTA's construction of the regulations at issue is not entitled to deference because it has not been consistent. The FTA Circular was issued in late 2015, more than 18 months after Defendants completed construction at the Middletown Road Station. The construction given to replacements of stairways at stations in the Circular was inconsistent with longstanding past practice. As discussed above, the FTA for many years had routinely funded Defendants' projects the scope of which included the replacement of staircases, and which did not include the installation of elevators without suggestion of any inconsistency with the DOT regulations. (D. 56.1 ¶¶ 41-44). Between passage of the ADA and the issuance of the final Circular, the FTA did not initiate any enforcement action asserting that Defendants' replacement of a subway staircase triggered the obligation to install elevators at that subway station. (D. 56.1 ¶ 47). The federal

government did not even seek leave to intervene in this action until February 2018, more two years after it issued its final Circular. (ECF No. 47). The FTA's "lengthy period of conspicuous inaction," which resulted in "unfair surprise" to Defendants, provides additional grounds for declining to defer to the FTA Circular in this circumstance. *Christopher*, 567 U.S. at 158. Defendants could not reasonably have been expected to anticipate the FTA's new 2015 interpretation of station stair replacements, when planning the Middletown Road Station project years before the FTA actually announced its interpretation.

## IV.    THE FTA'S JULY 2014 LETTER AND THE DOT'S MAY 2016 LEGAL OPINION ARE ALSO NOT ENTITLED TO DEFERENCE AND ARE INADMISSIBLE.

Plaintiffs' reliance on a July 8, 2014 letter from the FTA and a May 2016 Legal Opinion from the DOT also is misplaced. Those documents, like the FTA Circular, were issued after Defendants completed the physical construction at the site, and are not entitled to deference. In addition, the 2014 letter and the 2016 Legal Opinion, like the FTA Circular, are inconsistent with the plain language of the statute and regulations and with the FTA's prior conduct. Indeed, the 2016 Legal Opinion concludes that "section 37.43(a)(2) applies only to situations in which an entity is altering a primary function area," completely ignoring that subsection's express coverage of alterations that affect "*access to*" a primary function area such as alterations to mezzanine and platform staircases. (*Compare* Caiola Decl., Ex. L, 2 *with* 49 C.F.R. § 37.43(a)(2)). The Legal Opinion then erroneously concludes that "in a situation where a staircase is being replaced . . . such staircase replacement qualifies as an alteration that affects or could affect the usability of the facility or part of the facility," and therefore § 37.43(a)(1) applies, rather than § 37.43(a)(2). (Caiola Decl., Ex. L, 1-2). As explained above, however, *both* §§ 37.43(a)(1) and (a)(2) concern "[a]lterations of transportation facilities" "that affect or could affect the usability" of a facility. *See* 49 C.F.R. § 37.43(a). The relevant question in determining

which regulation applies is whether the alteration was one that "affected the use of or access to an area containing a primary function." The Legal Opinion's disregard for the plain language of the regulations suggests that it lacks the power to persuade and makes deference to that Opinion inappropriate. Moreover, the FTA's July 2014 letter, and the 2016 Legal Opinion are inadmissible hearsay and may not be relied upon in support of Plaintiffs' motion for partial summary judgment. *See* Fed. R. Civ. P. 56(c); Fed. R. Evid. 701, 802; *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 469-70 (S.D.N.Y. 2008) ("Evidence submitted in support of a summary judgment motion must be admissible at trial . . . Generally, an investigative report . . . would be hearsay"); *Wahad v. F.B.I.*, 179 F.R.D. 429, 436 (S.D.N.Y. 1998) (refusing to consider testimony containing "inadmissible hearsay" and "improper legal conclusions"). Consequently, neither the FTA Circular, the July 8, 2014 letter nor the 2016 Legal Opinion is entitled to deference.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment should be denied. Instead, the Court should grant Defendants' cross-motion for partial summary judgment and find that 49 C.F.R. § 37.43(a)(2) applies to Defendants' renovations of the Middletown Road Station.

Dated: June 18, 2018
         New York, New York

                                        */s/ Eric D. Witkin*
                                        Eric D. Witkin
                                        Shawn Matthew Clark
                                        LITTLER MENDELSON, P.C.
                                        900 Third Avenue
                                        New York, NY  10022.3298
                                        212.583.9600
                                        EWitkin@littler.com / SMClark@littler.com
                                        *Attorneys for Defendants*