UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :
BRONX INDEPENDENT LIVING SERVICES,                            :
et al.,                                                       :
                                                              :
                              Plaintiffs,                     :
                                                              :
            - against -                                       :    **16 Civ. 5023 (ER)**
                                                              :
METROPOLITAN TRANSIT AUTHORITY,                               :
et al.,                                                       :
                              Defendants.                     :
                                                              :
------------------------------------------------------------- X
                                                              X
UNITED STATES OF AMERICA,                                     :
                                                              :
                              Plaintiff-Intervenor**,**        :
                                                              :
            - against -                                       :
                                                              :
METROPOLITAN TRANSIT AUTHORITY,                               :    16 Civ. 5023 (ER)
et al.,                                                       :
                              Defendants.                     :
                                                              :
------------------------------------------------------------- X

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS'
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

                              AUDREY STRAUSS
                              Acting United States Attorney for the
                              Southern District of New York
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Tel.: (212) 637-2758/2743

LARA K. ESHKENAZI
ELLEN BLAIN
Assistant United States Attorneys
    — Of Counsel —

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ........................................................................................................3

    A.  The Questions Before the Court are Whether Elevator Installation is Required and Whether Defendants Have Met Their Burden to Prove that Such Installation Was Infeasible ........................................................................................................3

        1.  The Summary Judgment Order ...........................................................3

        2.  Defendant's Replacement of Stairways Triggered Section (a)(1) .........5

    B.  42 U.S.C. § 12147 and Section (a)(1) Require Installation of Elevators Unless Defendants Meet Their Burden To Show That It Was Infeasible To Do So ...............7

    C.  The ADA Explicitly Provides for Injunctive Relief, Which the United States May Seek At Any Time .........................................................................................12

        1.  The ADA Provides for Injunctive Relief .............................................12

        2.  The United States Is Not Subject to Laches or Similar Affirmative Defenses ......15

    D.  It Would Be Entirely Equitable to Require a Public Transit Facility to Comply with Federal Law ..................................................................................................18

        1.  Intent Is Irrelevant Under Claims for Equitable Relief Under the ADA ...............18

        2.  FTA's Correspondence with the MTA Is Also Irrelevant ....................19

        3.  MTA and NYCTA Must Comply with Federal Law .............................20

    E.  The United States Is Not Subject to a Statute of Limitations for Equitable Relief Under the ADA ....................................................................................21

CONCLUSION....................................................................................................23

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*,
  635 F.3d 87 (3d Cir. 2011).................................................................................................. 5, 11

*Amoco Prod. Co. v. Vill. of Gambell, AK*,
  480 U.S. 531 (1987)............................................................................................................ 13

*Bailey v. Bd. of Comm'rs of Louisiana Stadium & Exposition Dist.*,
  No. CV 18-5888, 2020 WL 814862 (E.D. La. Feb. 19, 2020) ............................................. 10

*Bartlett v. New York State Bd. of Law Exam'rs*,
  156 F.3d 321 (2d Cir. 1998)................................................................................................ 15

*Burlington N. R.R. Co. v. Bair*,
  957 F.2d 599 (8th Cir. 1992) .............................................................................................. 13

*Cherry v. City Coll. of San Francisco*, No. C,
  04-04981 WHA, 2006 WL 6602454 (N.D. Cal. Jan. 12, 2006) ............................................. 10

*Clearfield Trust Co. v. United States*,
  318 U.S. 363 (1943)............................................................................................................ 16

*Cuddle Wit, Inc. v. Chan*,
  No. 89 CIV. 7299 (JFK), 1989 WL 151267 (S.D.N.Y. Dec. 1, 1989) .................................... 17

*De La Rosa v. Lewis Foods of 42nd St., LLC*,
  124 F. Supp. 3d 290 (S.D.N.Y. 2015).................................................................................. 22

*Forsee v. Metro. Transportation Auth.*,
  No. 19 CIV. 4406 (ER), 2020 WL 1547468 (S.D.N.Y. Mar. 31, 2020).................................. 22

*Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*,
  916 F. 3d 792 (10th Cir. 2019)............................................................................................ 13

*Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*,
  280 F.3d 98 (2d Cir. 2001).................................................................................................. 18

*Garvey v. Long Island R. Co.*,
  159 N.Y. 323, 54 N.E. 57 (1899).......................................................................................... 21

*Guaranty Trust Co. of N.Y. v. United States*,
  304 U.S. 126 (1938)............................................................................................................ 21

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
    206 F. Supp. 3d 869 (S.D.N.Y. 2016)................................................................ 17

*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003)............................................................................. 18

*In re Metroplex on the Atl., LLC*,
    545 B.R. 786 (Bankr. E.D.N.Y. 2016)............................................................. 21

*Ins. Co. of the State of Pennsylvania v. Lakeshore Toltest JV, LLC*,
    No. 15 CIV. 1436 (ALC), 2015 WL 8488579 (S.D.N.Y. Nov. 30, 2015) ............. 17

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*,
    596 F.2d 70 (2d Cir. 1979)............................................................................... 14

*Johnson v. Holder*,
    564 F.3d 95 (2d Cir. 2009)................................................................................. 5

*Kikumura v. Hurley*,
    242 F.3d 950 (10th Cir. 2001) ......................................................................... 13

*Majorica, S.A. v. R.H. Macy & Co.*,
    762 F.2d 7 (2d Cir. 1985)................................................................................. 17

*Mannick v. Kaiser Found. Health Plan, Inc.*,
    No. C 03-5905 PJH, 2006 WL 1626909 (N.D. Cal. June 9, 2006) ......................... 10

*Mary Jo C. v. New York State & Local Ret. Sys.*,
    707 F.3d 144 (2d Cir. 2013)............................................................................. 11

*Miller v. California Pacific Medical Center*,
    19 F.3d 449 (9th Cir. 1994) ............................................................................. 13

*Norcom Elecs. Corp. v. CIM USA Inc.*,
    104 F. Supp. 2d 198 (S.D.N.Y. 2000).............................................................. 16

*Ognibene v. Parkes*,
    671 F.3d 174 (2d Cir. 2011)............................................................................. 13

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661 (2001)......................................................................................... 11

*Purcell v. New York Inst. of Tech. - Coll. of Osteopathic*,
    *Med.*, 931 F.3d 59 (2d Cir. 2019) .................................................................... 22

*Roberts v. Royal Atl. Corp.*,
    542 F.3d 363 (2d Cir. 2018)..................................................................... passim

*SEC v. Management Dynamics,*
  515 F.2d 801 (2d Cir. 1975) ........................................................................................ 13

*Simonelli v. Univ. of California-Berkeley,*
  02-1107 JL, 2007 WL 4165958 (N.D. Cal. Nov. 7, 2007) ...................................... 18

*Star Fuel Marts, LLC v. Sam's E., Inc.,*
  362 F.3d 639 (10th Cir. 2004) ................................................................................... 13

*Sunrise Plaza Assocs., L.P. v. Int'l Summit Equities Corp.,*
  288 A.D.2d 300, 733 N.Y.S.2d 443 (2001) ............................................................. 21

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,*
  60 F.3d 27 (2d Cir. 1995) ........................................................................................... 17

*Tough Traveler, Ltd. v. Outbound Prod.,*
  60 F.3d 964 (2d Cir. 1995) ......................................................................................... 17

*Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision),*
  618 F. Supp. 2d 256 (E.D.N.Y. 2009) ...................................................................... 17

*United States v. AMC Entm't, Inc.,*
  232 F. Supp. 2d 1092 (C.D. Cal 2002) ...................................................................... 23

*United States v. Angell,*
  292 F.3d 333 (2d Cir. 2002) ....................................................................................... 16

*United States v. Arrow Transp. Co.,*
  658 F.2d 392 (5th Cir. Unit B Oct. 1981) ........................................................... 16, 17

*United States v. City of Palm Beach Gardens,*
  635 F.2d 337 (5th Cir. 1981) ..................................................................................... 21

*United States v. Fla.,*
  938 F.3d 1221 (11th Cir. 2019) ................................................................................. 14

*United States v. Hongyan Li,*
  619 F. App' x 298 (5th Cir. 2015) .............................................................................. 21

*United States v. Incorporated Village of Island Park,*
  791 F. Supp. 354 (E.D.N.Y. 1992) ............................................................................ 21

*United States v. Milstein,*
  401 F.3d 53 (2d Cir. 2005) ......................................................................................... 16

*United States v. Philip Morris Inc.,*
  300 F. Supp. 2d 61 (D.D.C. 2004) ............................................................................. 16

*United States v. Schmitt,*
   734 F. Supp. 1035 (E.D.N.Y. 1990) ...................................................... 13

*United States v. Summerlin,*
   310 U.S. 414 (1940) ........................................................................... 16

*United States v. Tanski,*
   No. 1:04-CV-714, 2007 WL 1017020 (N.D.N.Y. Mar. 30, 2007) .................... 21, 22

*University of Tx. v. Camenisch,*
   451 U.S. 390 (1981) ........................................................................... 14

*Utah Power & Light Co. v. United States,*
   243 U.S. 389 (1917) ........................................................................... 16

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.,*
   423 F.3d 137 (2d Cir. 2005) ................................................................ 17

*Winter v. Natural Resources Defense Council, Inc.,*
   555 U.S. 7 (2008) .............................................................................. 13

Statutes & Regulations

28 U.S.C. § 2642 ...................................................................................... 22

29 U.S.C. § 794a ...................................................................................... 15

42 U.S.C. § 2000d-1 ................................................................................. 15

42 U.S.C. § 12101(a) ................................................................................ 19

42 U.S.C. § 12131 ................................................................................. 1, 20

42 U.S.C. § 12133 .................................................................................... 15

42 U.S.C. § 12147 ............................................................................... 6, 9, 12

42 U.S.C. § 12183(a)(2) .............................................................................. 7

42 U.S.C. § 12188(b) ............................................................................ 15, 17

28 C.F.R. Part 35 ...................................................................................... 1

28 C.F.R. Part 36 ...................................................................................... 8

28 C.F.R. § 35.104 ................................................................................... 20

36 C.F.R. Part 1191 ................................................................................... 8

v

49 C.F.R. Part 37 ........................................................................................................ 1, 8

49 C.F.R. § 25.125(a)(1) ............................................................................................. 17

49 C.F.R. § 27.121 ...................................................................................................... 17

49 C.F.R. § 37.42(b) ..................................................................................................... 7

49 C.F.R. § 37.43 ................................................................................................. passim

49 C.F.R. § 37.11 ........................................................................................................ 17

49 C.F.R. § 37.3 .......................................................................................................... 20

56 Fed. Reg. 35 ............................................................................................................. 4

1990 U.S.C.C.A.N. 267 ................................................................................................. 9

1990 U.S.C.C.A.N. 445 ................................................................................................. 6

The United States of America, by and through its attorney Audrey Strauss, respectfully submits this memorandum of law in further support of Plaintiffs' motion for partial summary judgment and in opposition to Defendants' cross-motion for partial summary judgment.

## PRELIMINARY STATEMENT

When the Metropolitan Transportation Authority ("MTA") and the New York City Transit Authority ("NYCTA") (collectively "Defendants") renovated the staircases at Middletown Road Station, the only access between the street and the platform, Defendants were obligated to make accessibility changes to the maximum extent feasible regardless of cost. Having now concluded expert discovery, Defendants have failed to demonstrate that it was infeasible to install elevators during the station renovation.  Thus, Defendants have violated the Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12165, and its implementing regulations, 28 C.F.R. Part 35 and 49 C.F.R. Part 37.

As an initial matter, Defendants have misconstrued the questions currently before the Court.  Defendants ignore that the Court has already determined that 49 C.F.R. § 37.43(a)(1) ("Section (a)(1)") applied to the renovation of the stairways, which required Defendants to make those alterations readily accessible to individuals with disabilities to the maximum extent feasible, including to individuals who use wheelchairs.  Defendants' attempts to relitigate this issue should be rejected.  The Court's determination that 49 C.F.R. § 37.43(a)(2) ("Section (a)(2)") "arguably"  applied to other portions of the station renovation, thus permitting Defendants to make those portions readily accessible only where doing so would not exceed 20% of the entire cost, is not relevant to the issues before the Court.

Rather, the two questions for the Court to decide are:  (1) whether Section (a)(1) requires the installation of an elevator in this case in order to make the change in level from the street to

platform accessible to individuals who use wheelchairs; and (2) if so, whether Defendants have met their burden to prove that elevator installation was infeasible.  *See* Point A.  The statute, the regulations, and common sense require that, in situations like this where Section (a)(1) applies to alterations of stairways, a public entity is required to install an elevator regardless of cost unless it was infeasible to do so.  *See* Point B.  And as explained in Plaintiffs' opening memoranda of law, Defendants have failed to prove that it was infeasible to install elevators at Middletown Road station.

Defendants attempt to avoid this conclusion by relying on a host of irrelevant and misguided assertions.  Defendants again ignore the procedural history of this case by misconstruing the standard for injunctive relief; once the United States has proved a violation of the ADA, irreparable harm is assumed.  *See* Point C.  Similarly, Defendants fail to acknowledge that the affirmative defense of delay or laches is inapplicable to the United States, which may bring actions to enforce the ADA at any time.  In addition, it is entirely equitable to impose injunctive relief in this case, as the remedy for violating the ADA by failing to install elevators is the installation of elevators.  This is particularly apt because Congresses specifically intended the ADA to remove barriers to transportation for individuals with disabilities.  Defendants' quibbles with the FTA are beside the point, and as public entities providing public transportation, Defendants are indisputably obligated to comply with federal law.  Finally, contrary to Defendants' argument, there is no applicable statute of limitations to ADA actions brought by the United States seeking injunctive relief.

## ARGUMENT

### A.  The Questions Before the Court are Whether Elevator Installation is Required and Whether Defendants Have Met Their Burden to Prove that Such Installation Was Infeasible

Defendants twist this Court's prior order beyond recognition, attempting to relitigate issues that have already been decided.  The Court previously concluded that Section (a)(1) applied to Defendants' renovation of the stairways at Middletown Road because that alteration affected the station's "usability."  The Court's acknowledgment that Section (a)(2) "arguably" applied to other renovations does not alter the Court's holding that the replacement of the stairs triggered the alterations requirements of Section (a)(1).  The only two issues the Court did not— and was not asked to— address were:  (1) the scope of the changes required by Section (a)(1); and (2) if the scope of required changes included installing elevators, whether defendants have met their burden to show that it was technically feasible to do so.

### 1.  The Summary Judgment Order

In 2018, the parties cross-moved for partial summary judgment on a narrow, legal question:  whether 49 C.F.R. § 37.43(a)(1) or 49 C.F.R. § 37.43(a)(2) applied to the stairway renovations at Middletown Road.  *See, e.g.*, Dkt. No. 80 at 16; Dkt. No. 83; Dkt. No. 100 at 10.  On March 5, 2018, this Court issued a decision on the cross-motions.  *See* Dkt. No. 131 ("Summary Judgment Order").  The Court noted that Plaintiffs sought a "determination that the replacement of the stairways . . . triggered certain accessibility requirements under [Section (a)(1)]," and that Defendants sought "a determination that the applicable regulation is [Section (a)(2)]."  *Id.* at 2; *see also id.* at 8 ("The parties agree that the only issue to be determined by the Court . . . is whether the scope of work performed at Middletown Road Station triggers the obligations in § 37.43(a)(1) or (a)(2).").  The Court explained that this "distinction matters

3

because under [Section (a)(1)], Defendants must make certain alterations to increase accessibility

no matter the cost, while under [Section (a)(2)], Defendants must make such alterations only if

doing so would not be disproportionately expensive." *Id.*  The Court also noted, however, that

the parties had not sought a ruling on the scope of the changes required by Section (a)(1), and

that Defendants disputed that Section (a)(1) "requir[es] the installation of an elevator[.]" *Id.* at 8

n.5.

The Court examined the distinction between the two sections, stating that Section (a)(1)

applies to alterations that affect "usability" and Section (a)(2) applies to alterations that affect the

"usability of an area with a 'primary function.'" *Id.* at 6 (citing 49 C.F.R. § 37.43).  Again noting

that the parties disputed which section applied, the Court "f[ound] that § 37.43(a)(1) applies."

*Id.* at 8.  Specifically, the Court found that "Defendants' renewal project, which involved the

replacement of the stairways at the Middletown Road Station, clearly met [the] condition" that

the changes affected "usability," and thus triggered Section (a)(1).  *Id.* at 9.  In particular, the

Court concluded, "Defendants' replacement of the stairways at Middletown Road Station was

clearly an alteration that affected the station's usability under [*Roberts v. Royal Atl. Corp.*, 542

F.3d 363, 369 (2d Cir. 2018)].  The alteration thus triggered accessibility obligations under §

37.43(a)(1)." *Id.* at 10; *see also id.* at 9 ("Defendants' replacement of the stairways also affected

the usability of the facility.") (citing Final Rule, Nondiscrimination on the Basis of Disability by

Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35,544, at 35,581 (July 26,

1990); *Roberts*, 542 F.3d at 369).

The Court further concluded Sections (a)(1) and (a)(2) "are not mutually exclusive,"

because an "alteration can both affect the usability of a facility, which triggers (a)(1), and affect

the usability of or access to an area of a facility containing a primary function, which triggers

(a)(2)." *Id.* at 10; *see also id.* at 7 (noting that Section (a)(2) applies to "additional" changes)

(citing *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 635 F.3d 87, 95

(3d Cir. 2011)).  Specifically, the Court found that "[i]n addition to replacing the stairways,

Defendants made extensive alterations to the mezzanine and platform floors of the stations,"

which "clearly contain primary functions." *Id.* at 10.  Therefore, the Court "agree[d] with

Defendants that § 37.43(a)(2) also arguably applies to the renovations made at the Middletown

Road Station," and noted that the government "recognizes that [Section (a)(2)] applies to a less

broad set of alterations that are 'additional' to those triggered under (a)(1)." *Id.* at 10-11

(quoting Dkt. No. 106 at 10).

### 2. Defendant's Replacement of Stairways Triggered Section (a)(1)

As the Court explicitly held, Defendants were required to comply with Section (a)(1)

when renovating the stairs, mandating a public entity to "make the alterations . . . in such a

manner, to the maximum extent feasible, that the altered portions of the facility are readily

accessible to and usable by individuals with disabilities, including individuals who use

wheelchairs[.]" 49 C.F.R. § 37.43(a)(1).  And as this Court found, the "altered portions of the

facility" that triggered this requirement were the alterations to the stairways.  Summary

Judgment Order at 9-10.  Thus, those altered portions must therefore be made accessible to the

maximum extent feasible—here, by installing elevators—regardless of cost.  Defendants cannot

escape the law of the case.  *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of

the case doctrine commands that when a court has ruled on an issue, that decision should

generally be adhered to by that court in subsequent stages in the same case unless cogent and

compelling reasons militate otherwise.") (citations and quotation marks omitted); *see also United

States v. Asare,* 15 Civ. 3556 (AT) (OTW) (S.D.N.Y. Aug. 5, 2020), Dkt. No. 258, at 20-21

(ruling that the law of the case dictates that court's prior ruling defining certain medical practices as discriminatory under Title III of the ADA applies).

That Defendants made other alterations that are subject to Section (a)(2)'s "addition[al]" requirements is irrelevant.  Summary Judgment Order at 10.  The Court's conclusion that the Defendants' alterations to areas other than the stairways—the "extensive renovations to the mezzanine and platform floors" containing primary functions "where tickets are bought and trains are boarded"—"arguably" triggered Section (a)(2), does not negate the Court's other conclusion that replacement of the stairways triggered Section (a)(1).  To conclude that both Section (a)(1) and (a)(2) apply to each alteration at the station, as Defendants appear to suggest, would permit public entities to pick and choose which station alterations are subject to a cost defense.

Indeed, as the government previously outlined, *see* Dkt. No. 106, Congress recognized when enacting the ADA that alterations that affect or could affect "usability" must comply with the ADA to the maximum extent feasible, and that if those same alterations affect or could affect a "primary function" area, even more changes would be required.  *See* 42 U.S.C. § 12147; *see also* Dkt. No. 106, at 5-7.  Congress thus acknowledged that alterations to different areas of the station could trigger different requirements, requiring public entities to make alterations readily accessible to and usable by individuals with disabilities to the maximum extent feasible, but permitting public entities to take cost into account when meeting their additional obligations regarding the path of travel *to* a primary function area.  By allowing this distinction, Congress recognized that the intended increased accessibility could be undermined if an entity were required to expend more funds on the path of travel to the altered accessible primary function area than the overall amount spent on making the primary function area accessible.  *See* H.R.

6

Rep. 101-485, pt. 3, at 64 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 445, 487 (explaining

identical provision in Title III of the ADA[1]  and noting that the "obligations for areas containing

primary functions" are "additional").

Accordingly, consistent with the Court's holding, regardless of what Section (a)(2) may

have required for the other renovations at Middletown Road, Defendants cannot escape the

conclusion that replacing the staircases, the only means of vertical access to the station, required

that, "to the maximum extent feasible, [those] altered portions of the facility [must be] readily

accessible to and usable by individuals with disabilities, including individuals who use

wheelchairs[.]"  49 C.F.R. § 37.43(a)(1).

### B.  42 U.S.C. § 12147 and Section (a)(1) Require Installation of Elevators Unless Defendants Meet Their Burden To Show That It Was Infeasible To Do So

Because Section (a)(1) applies to the renovation of the stairs, the burden shifts to

Defendants to demonstrate that it was technically infeasible to make such alterations accessible

to people with disabilities—including those who use wheelchairs—by installing an elevator.  *See*

49 C.F.R. § 37.42(b); 2010 Standards Section 106.5.[2]  As discussed in more detail in Plaintiffs'

briefs filed in support of their motion, that burden is high.  *See, e.g.*, *Roberts v. Royal Atl. Corp*.,

542 F.3d 363, 371 (2d Cir. 2008) (holding that a defendant must establish that the requested

alteration would be "virtually impossible" in light of the "nature of an existing facility")

(quotation marks and citation omitted).  Defendants attempt to lighten their burden by arguing

that Section (a)(1) does not require the installation of elevators, but instead requires only changes

---

[1] *See* 42 U.S.C. § 12183(a)(2) (governing new construction and alterations in places of public accommodation and commercial facilities).

[2] The United States is not addressing here whether other alterations at the station independently triggered the requirements of Section (a)(1), thus requiring the installation of an elevator where not infeasible.

to the stairs.  Defendants are wrong.

Defendants misconstrue the requirements of Section (a)(1) by contending that, as here, where no accessible route exists, a public transit provider meets its obligations under Section (a)(1) when altering or replacing a set of stairs by ensuring "that 'all steps' on the new staircase had 'uniform riser heights and uniform tread widths' and that the handrails complied with size and spacing requirements."  Dkt. No. 163, at 21-22 (citing "ADAAG §§ 4.9, 4.26.2").[3]  While the DOT Standards provide technical requirements for stairways, such as riser heights, tread surfaces, and handrails, *see* DOT Standards § 504, the DOT Standards also provide that  "[a]t least one accessible route shall connect each story and mezzanine in multi-story . . . facilities," *id.* § 206.2.3.  Notably, the DOT Standards do not define stairways as an "accessible route."  *See id.* § 402.2 ("Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts.").  Nor do DOT's regulations include staircases in its definition of an "accessible path of travel" because a staircase, by definition, can never be made accessible to individuals who use wheelchairs.  49 C.F.R. § 37.43(d).  Defendants thus selectively read the DOT Standards and Regulations, ignoring that when a stairway is the only means of vertical access between floors, that route must meet more than § 504's

---

[3] The ADA Accessibility Guidelines ("ADAAG") for Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, were originally issued by the Access Board, and promulgated by the Departments of Justice and Transportation as the 1991 ADA Standards for Accessible Design, first published at 28 C.F.R. Part 36, Appendix A, and 49 C.F.R. Part 37, Appendix A.  As Defendants did previously, *see* Dkt. No. 106, at 11 n.8, Defendants cite to the DOJ version of the 1991 Standards, rather than DOT's Standards.  In 2006, DOT adopted the 2004 ADAAG, including its own additions or modifications, as the ADA Standards for Transportation Facilities ("DOT Standards"), located in Appendices B and D to 36 C.F.R. Part 1191 and Appendix A to Part 37.

requirements—it must be made into an "accessible route," accessible by individuals who use wheelchairs.[4]

In addition, while Defendants correctly note that they were required to make other accessibility upgrades, such as by installing tactile warning strips to the platform edges, *see* Dkt. No. 163, at 22, Defendants puzzlingly ignore the specific statute and regulations at issue in this case.  Section 12147 and 49 C.F.R. § 37.43 apply generally to "individuals with disabilities," but also specifically to "individuals who use wheelchairs."  42 U.S.C. § 12147; 49 C.F.R. § 37.43.[5] An individual who uses a wheelchair cannot climb stairs.

Defendants also miss the mark by arguing that because Section (a)(1) does not require a public entity to make "an entire facility" accessible when it alters one section, that somehow means that they need not make the alteration itself fully accessible to individuals with disabilities.  Dkt. No. 163, at 20.  Defendants acknowledge that when they "replaced the staircases . . . , § (a)(1) required that Defendants alter the staircases . . . in such a manner as to make those portions readily accessible," *id.* at 21, but ignore that Section (a)(1) requires Defendants make the alteration accessible to individuals with disabilities to the maximum extent feasible—including, as noted above, those who use wheelchairs, *see* 49 C.F.R. § 37.43(a)(1).

---

[4] Moreover, the DOT Standards not only provide the maximum slope for walking surfaces, but also provide that vertical changes in level cannot exceed ¼ of an inch.  DOT Standards §§ 403.3, 403.4, 303.2.  The only route between the street level and the platform at Middletown Road Station is a stairway, which far exceeds the steepness and vertical change limits, further demonstrating that a stairway is not accessible to those who use wheelchairs.

[5] This is commonsensical, given that DOT's Title II regulations, including the DOT Standards, govern transportation facilities, with the goal of increasing mobility and "treat[ing] [individuals with disabilities] with respect and dignity while using transportation services."  H.R. Rep. 101-485, 24-25, 1990 U.S.C.C.A.N. 267, at 268.  As a result, Congress and DOT have specifically mandated that public entities, when altering transit facilities, take into account individuals who use wheelchairs.

Defendants' cited cases are not to the contrary, as each explicitly acknowledges that the ADA requires altered portions of a facility, like the staircases here, to be made accessible to the maximum extent feasible.  *See* Dkt. No. 163, at 20-23 (citing *Roberts*, 542 F.3d at 369 (alterations that affect usability must be made accessible to the maximum extent feasible); *Bailey v. Bd. of Comm'rs of Louisiana Stadium & Exposition Dist.*, No. CV 18-5888, 2020 WL 814862, at *14-15 (E.D. La. Feb. 19, 2020) (same); *Cherry v. City Coll. of San Francisco*, No. C 04-04981 WHA, 2006 WL 6602454, at *10 (N.D. Cal. Jan. 12, 2006) (same); *Mannick v. Kaiser Found. Health Plan, Inc.*, No. C 03-5905 PJH, 2006 WL 1626909, at *5 (N.D. Cal. June 9, 2006) (same)).

Finally, applying Section (a)(1) to transportation facilities when a public entity alters the only means of vertical access between levels but not when conducting more extensive renovations would not lead, as Defendants argue, to an "illogical" result.  Dkt. No. 163, at 22. As an initial matter, pursuant to Section (a)(1), a public entity would not be obligated to install an elevator if it could demonstrate that it would be infeasible to do so.  *See* 49 C.F.R. § 37.43(a)(1) & (b); 49 C.F.R. Pt. 37, Appendix A; DOT Standards § 106.5.  Moreover, it is also possible that when Defendants conduct major structural alterations, such alterations could "affect usability" and thus trigger Section (a)(1).  *See, e.g.*, DOT Guidance, 2015 WL 6037995, at 3.4.2 (discussing the meaning of alterations that could affect usability to include renovations "that affect the use of a facility in any way, and not simply changes that relate directly to access.") Most fundamentally, this result—requiring a public entity to evaluate whether an elevator can be installed in a transit facility when replacing a staircase, and then installing it if feasible without regard to cost—is entirely consistent with Congress's stated intent to "eliminat[e]" "the discriminatory effects of    . . . transportation . . . barriers."  42 U.S.C. § 12101(a), (b).  Congress

10

specifically directed public entities to make a transit facility accessible to "the maximum extent feasible," including to individuals who use wheelchairs, without regard to cost, when altering a station's usability.

As the Second Circuit concluded with respect to identical language in Title III and the Department of Justice's implementing regulations,

> the "maximum extent feasible" requirement does not ask the court to make a judgment involving costs and benefits. Instead it requires accessibility except where providing it would be "virtually impossible" in light of the "nature of an existing facility." The statute and regulations require that such facilities be made accessible even if the cost of doing so—financial or otherwise—is high.

*Roberts*, 542 F.3d at 371 (quoting 28 C.F.R. § 36.402(c)); *see also Disabled in Action of Pennsylvania v. Se. Pennsylvania Trans. Auth.*, 635 F.3d 87, 95 n.10 (3d Cir. 2011) ("[T]he ADA does contemplate that, in general, if a public entity cannot afford to make alterations to a public transit facility that include making the altered portions accessible, it should not make alterations at all. Congress felt that it was discriminatory to the disabled to enhance or improve an existing facility without making it fully accessible to those previously excluded. Although this is a demanding requirement, it is consistent with the ADA's nature as a far-reaching anti-discrimination statute.") (quotation marks and citation omitted).[6]

As Plaintiffs explain in detail, because Defendants have failed to meet their burden to prove that installing elevators was infeasible, Defendants are left with no excuse for failing to

---

[6] Indeed, "one of the Act's most impressive strengths has been identified as its comprehensive character, and accordingly the Act has been described as a milestone on the path to a more decent, tolerant, progressive society."  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (quotation marks and citations omitted).  The Second Circuit has thus directed that "[a]s a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 160 (2d Cir. 2013) (quotation marks and citations omitted).

install elevators.[7]  There is no genuine issue of material fact that Defendants have failed to rebut the presumption that the alterations to the stairways, the only means of access between the street and platform, must be made accessible to individuals with disabilities, including those who use wheelchairs.

### C.  The ADA Explicitly Provides for Injunctive Relief, Which the United States May Seek At Any Time

Defendants misconstrue the standard for injunctive relief applicable to actions brought pursuant to the ADA, and ignore that enforcement actions by the United States are not subject to defenses such as delay.  The ADA expressly provides that the United States may seek equitable relief where the ADA has been violated.  Moreover, Defendants' arguments that the United States somehow delayed this enforcement action are not only wrong but entirely irrelevant to whether the Court should grant equitable relief, as the United States is not subject to the defense of laches. Tellingly, in support of these misguided arguments, Defendants fail to cite the ADA or a single case involving claims asserted by the United States.

### 1.  The ADA Provides for Injunctive Relief

Defendants err in contending that the government is not entitled to injunctive relief in this

---

[7]  *See* Dkt. No. 153, at 11-14 & 17-18 (explaining that 42 U.S.C. § 12147(a) requires that alterations be made accessible to "the maximum extent feasible," and that 49 C.F.R. § 37.43(b) defines "maximum extent feasible" to apply to the "occasional case where the nature of an existing facility makes it impossible to comply fully with applicable accessibility standards); *id.* at 15-16 (explaining that Plaintiffs have met their burden of persuasion that installing elevators was feasible); *id.* at 18-21 (explaining that Defendants have not met their burden; that Defendants' reliance on one clause in one sentence in the legislative history, which provides as an example of infeasibility any alteration to a load-bearing structural member where that member was not also altered, is misplaced; and that Defendants ignore the first clause in the same sentence which provides that such alterations are infeasible only where they have "little likelihood of being accomplished"); *id* at 21-22 (explaining that, in any event, Defendants need not have altered load-bearing structural members to install elevators at Middletown Road station).

case.

As a general matter, "[a] party requesting permanent injunctive relief must demonstrate (1) irreparable harm . . . and (2) actual success on the merits." *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2011) (citing *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.") (further citations omitted).  However, in statutory enforcement actions such as this one, irreparable injury is presumed.  *See, e.g.*, *Star Fuel Marts, LLC v. Sam's E., Inc*., 362 F.3d 639, 651-52 (10th Cir. 2004) ("We have held that '[w]hen the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown.'") (quoting *Kikumura v. Hurley*, 242 F.3d 950, 962-63 (10th Cir. 2001), *abrogation on different grounds recognized by Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F. 3d 792 (10th Cir. 2019)) (further citations omitted); *Miller v. California Pacific Medical Center*, 19 F.3d 449, 460 (9th Cir. 1994) (en banc) ("[i]f the [government] demonstrates that it is likely to prevail on the merits, we presume irreparable injury."), *abrogated on different grounds*, *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7 (2008);  *see also Burlington N. R.R. Co. v. Bair*, 957 F.2d 599, 601 (8th Cir. 1992) ("[I]t is not the role of the courts to balance the equities between the parties [where] Congress has already balanced the equities and has determined that, as a matter of public policy, an injunction should issue where the defendant is engaged in . . . any activity which the statute prohibits."); *United States v. Schmitt*, 734 F. Supp. 1035, 1052 (E.D.N.Y. 1990) ("[I]rreparable harm is presumed where the Government seeks to enforce a statutory violation by

way of preliminary injunction expressly authorized in favor of the Government by that statute.")
(citing *SEC v. Management Dynamics,* 515 F.2d 801, 808 (2d Cir. 1975)).[8]

In this case, the United States requested that the Court grant judgment in its favor, declare
that Defendants violated Title II of the ADA by failing to comply with Section (a)(1), and
"[e]nter an injunction requiring defendants to install elevators at the Middletown Road station in
such a manner as to make the station . . . readily accessible to and usable by individuals with
disabilities to the maximum extent feasible, including individuals who use wheelchairs."  Dkt.
No. 66 (Prayer for Relief).  The Court has now concluded that Section (a)(1) applied to
Defendants' renovation of the staircases.  *See* Summary Judgment Order at 9-10.   Accordingly,
the Court has determined that Defendants must make those alterations accessible to the
maximum extent feasible, including to those to use wheelchairs, unless it is infeasible to do so.
*See id.*; *see also* 49 C.F.R. § 37.43(a)(1).  Thus, if the Court grants Plaintiffs' and the United
States' instant motion, finding that Section (a)(1) required the installation of elevators and
Defendants have failed to meet their burden demonstrating that it was infeasible to do so, then
the United States has succeeded on the merits of its claim.

Congress has explicitly provided that, in the event there is a violation of the ADA, the
appropriate remedy is injunctive relief.  In Title II, "Congress expressly incorporated § 505 of
the Rehabilitation Act, which in turn incorporated Title VI of the Civil Rights Act, as the

---

[8] Defendants cite the wrong standard, relying entirely on cases seeking preliminary relief before
a court issues a finding of liability.  *See* Dkt. No. 163 at 33 (citing *University of Tx. v.
Camenisch*, 451 U.S. 390, 398 (1981) (reviewing preliminary injunction order, and noting that
the "proceedings here bear the marks of the haste characteristic of a request for a preliminary
injunction" and that the lower court "certainly did not hold that the standards for a summary
judgment had been met"); *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 73 (2d
Cir. 1979) (reviewing preliminary injunction order and declining to "express any opinion on
whether the district court could appropriately award permanent injunctive relief at the trial on the
merits").

available 'remedies, procedures, and rights.'" *United States v. Fla.*, 938 F.3d 1221, 1227 (11th Cir. 2019) ("Through a series of cross-references, the enforcement mechanism for Title II of the ADA is ultimately Title VI of the Civil Rights Act of 1964.") (citing 42 U.S.C. § 12133; 29 U.S.C. § 794a; 42 U.S.C. § 2000d-1). Title VI's, and thus Title II's, remedies include injunctive relief. *See Bartlett v. New York State Bd. of Law Exam'rs*, 156 F.3d 321, 331 (2d Cir. 1998) (applying general rule to Title II that the federal courts have the power to award any appropriate relief), *vacated on other grounds*, 527 U.S. 1031 (1999); *see also* 42 U.S.C. § 12188(b)(2)) (providing that in actions by the United States under Title III of the ADA, relief includes equitable relief, including "temporary, preliminary, or permanent relief"). That is consistent with Congress's goal in enacting the ADA to address "the discriminatory effects of . . . transportation . . . barriers," and to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(a)(5) & (b)(1).

Therefore, in the event that the Court finds that Defendants violated Section (a)(1) by failing to install elevators when it was technically feasible to do so, the United States has proved its claim that Defendants violated the ADA. Irreparable harm is thus presumed, and the ADA provides for injunctive relief. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a; 42 U.S.C. § 2000d-1. The injunctive relief here, where the violation is failure to install an elevator as required by Section (a)(1), is to install an elevator. Without such installation, the ADA violation would remain unremedied, as individuals with disabilities, including those who use wheelchairs, would still have to use stairs and thus would remain unable to access this public transit station: precisely the barrier the ADA seeks to eliminate.

### 2.  The United States Is Not Subject to Laches or Similar Affirmative Defenses

Defendants' argument that the United States' alleged delay in bringing this action "destroys" the government's right to equitable relief, Dkt. No. 163, at 33, is a red herring.

As a fundamental principle, "laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest." *United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002) (rejecting defense to claim brought by the United States pursuant to Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. §§ 401 *et seq.*) (citing *United States v. Summerlin*, 310 U.S. 414, 416 (1940) (evaluating claim under the National Housing Act and concluding, "[i]t is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights"); *United States v. Arrow Transp. Co.*, 658 F.2d 392, 394 (5th Cir. Unit B Oct. 1981) (noting that the "time lapse between the accidental sinking [of a barge] and the filing of suit [to recover damages] exceeded 28 years," and concluding, "[a]lthough the fact situation describes a textbook case of laches, that defense cannot be asserted against the United States in its sovereign capacity to enforce a public right or to protect the public interest.")). Thus, while "the United States is subject to laches in certain restricted contexts, such as commercial suits," *United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 72 (D.D.C. 2004) (citing *Clearfield Trust Co. v. United States*, 318 U.S. 363, 369 (1943) (United States may be subject to laches commercial context because it "does business on business terms"), "'[a]s a general rule, laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest.,'" *Phillip Morris*, 300 F. Supp. 2d at 72 (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917)); *see also United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005) (reiterating that "laches may not be asserted against the United States in a civil matter").

Defendants ignore this bedrock notion, instead relying on cases that do not involve the federal government. *See* Dkt. No. 163, at 33-34 (citing *Norcom Elecs. Corp. v. CIM USA Inc.*, 104 F. Supp. 2d 198, 201 (S.D.N.Y. 2000) (evaluating arbitration claim in case between private

parties "alleging tortious interference with Norcom's contractual relations with its dealers and customers, violations of the Lanham Act and the New York General Business Law, and a number of common law claims"); *Ins. Co. of the State of Pennsylvania v. Lakeshore Toltest JV, LLC*, No. 15 CIV. 1436 (ALC), 2015 WL 8488579, at *1 (S.D.N.Y. Nov. 30, 2015) (evaluating indemnity claims for breach of several construction contracts); *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 29–30 (2d Cir. 1995) (breach of contract claim between creator and publisher of children's books); *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985) (action for trademark infringement and unfair competition)); *see also* Dkt. No. 163, at 36 n.26 & 27 (citing *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 139 (2d Cir. 2005) (trademark infringement action between food producers); *Town of Riverhead v. CSC Acquisition-NY, Inc. (Cablevision)*, 618 F. Supp. 2d 256, 258 (E.D.N.Y. 2009) (action against television cablecast provider); *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 965 (2d Cir. 1995) (trade dress infringement action between child carrier manufacturers); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 885 (S.D.N.Y. 2016) (companies' claim for patent, copyright, and trademark infringement against nineteen defendants); *Cuddle Wit, Inc. v. Chan*, No. 89 CIV. 7299 (JFK), 1989 WL 151267, at *1 (S.D.N.Y. Dec. 1, 1989) (copyright infringement action involving toys)).

Defendants fail to cite any authority limiting the federal government's right to seek equitable relief to enforce the ADA because of any alleged "delay."  *See Angell*, 292 F.3d at 338. Here, for years, the FTA attempted to obtain Defendants' voluntary compliance with the ADA when conducting the station renovation, as it is required to do, *see, e.g.*, 49 C.F.R. §§ 37.11 & 27.121, and when compliance was not forthcoming, the United States Department of Justice began the process of investigating and evaluating whether to authorize suit, 49 C.F.R. §

25.125(a), 42 U.S.C. § 12188(b).  *Cf. Arrow Transp. Co*., 658 F.2d at 394 (government delay of 28 years immaterial).

> **D.  It Would Be Entirely Equitable to Require a Public Transit Facility to Comply with Federal Law**

Defendants' argument that it would somehow be inequitable to grant an injunction where "Defendants did not willfully disregard the law, as they understood it" and because the installation of elevators is costly, *see* Dkt. No. 163, at 36-41, is misplaced.  First, a defendant's intent is irrelevant to obtaining injunctive relief under the ADA; second, FTA's actions are irrelevant to the instant motion; and third, MTA and NYCTA are public entities and have a duty to comply with federal anti-discrimination laws.

> **1.  Intent Is Irrelevant Under Claims for Equitable Relief Under the ADA**

As Defendants acknowledge, in order to establish a violation under the ADA, the "plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).  Unlike claims seeking money damages for violations of the ADA, *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001) (requiring plaintiffs seeking money damages against states under Title II "to establish that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability"), plaintiffs need not demonstrate that a defendant intended to violate the ADA in order to receive injunctive relief, *see, e.g.*, *Simonelli v. Univ. of California-Berkeley*, No. C 02-1107 JL, 2007 WL 4165958, at *1 (N.D. Cal. Nov. 7, 2007) ("Under the ADA [], Plaintiff does not have to show intent to receive injunctive relief").  This is again consistent with

Congress's intent to remove barriers to access, separate and apart from "outright intentional discrimination[.]"  42 U.S.C. § 12101(a)(5).

Accordingly, that Defendants "did not willfully disregard the law" is immaterial to whether injunctive relief is appropriate.  Dkt. No. 163, at 37.

### 2.   FTA's Correspondence with the MTA Is Also Irrelevant

Second, Defendants' objections to the FTA's correspondence notwithstanding, *see* Dkt. No. 163, at 33-39, FTA's actions regarding Middletown Road are entirely irrelevant to the instant motion.

The fundamental question before the Court is whether Defendants have met their burden to demonstrate that installation of elevators was infeasible at the Middletown Road Station. FTA's correspondence with Defendants on this point is inconsequential to the Court's independent analysis of that question.[9]  Indeed, Defendants themselves have previously pressed exactly that point, asserting that "the FTA's 'determination' [that MTA was required to make the station accessible to the maximum extent feasible] is [not] material to Plaintiffs' motion for partial summary judgment."  Dkt. No. 99, at ¶ 19; *see also id.* at ¶ 20 (denying that FTA's determination that "the magnitude of the station renewal project constituted an improvement to the overall usability of the station" is material to Plaintiffs' first cross-motion for partial summary judgment) (alterations omitted); *id.* at ¶ 21 (denying that DOT's May 2016

---

[9] FTA disputes, however, that it changed its "interpretation of the law," as Defendants argue. Dkt. No. 163, at 35 n.24.  Rather, as early as 2012, FTA asked Defendants questions about the feasibility of installing an elevator at Middletown Road Station, and took the consistent position over years of discussions with Defendants that an elevator must be installed unless Defendants could demonstrate that it was technically infeasible to do so; and FTA ultimately rejected Defendants' conclusion that it was infeasible and withdrew funding for the project. *See* Dkt. No. 99, at ¶¶ 19-22 (outlining correspondence from 2012 through 2016); Dkt. No. 81-12 (DOT correspondence to Defendants).

determination is material).  And to the extent that Defendants debate the FTA's course of

conduct over decades, Defendants cannot argue both that FTA's determination to not fund this

renovation is immaterial, *see id.* at ¶¶ 19-21, and that FTA's previous determinations to fund

other renovations are relevant, *see id.* at ¶¶ 41-47.

Moreover, in order to prove its claim in this matter, the United States is not relying on

FTA's determination that it was feasible to install elevators at Middletown Road.  *See* Dkt. No,

125 (order reflecting United States' agreement that it would not rely on "FTA's and US DOT's

determinations, conclusions and findings regarding Defendants' compliance with the ADA

and/or the DOT Regulations, including the technical feasibility and cost of installing elevators

during the renovations at the Middletown Road Station").  Accordingly, FTA's correspondence

with Defendants about the scope of the requirements under the ADA is immaterial to this Court's

analysis of the same question.

### 3.  MTA and NYCTA Must Comply with Federal Law

Third, it is undisputed that MTA and NYCTA are "public entities" within the meaning of

42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, and thus are prohibited from discriminating against

individuals with disabilities in connection with transportation services.  *See* 42 U.S.C. §§ 12131-

32, 12141-12150; 49 C.F.R. §§ 37.3, 37.5; *see also* 28 C.F.R. §§ 35.104, 35.130.  As providers

of public transportation, Defendants are required to comply with the ADA.

That installing elevators at Middletown Road Station would be expensive is precisely

beside the point.  Because the Court found that Section (a)(1) applied to the renovations of the

stairs, the cost of complying with Section (a)(1) is irrelevant as a matter of law.  It is also

irrelevant as a matter of principle.  As noted above, Congress intended to create a comprehensive

mandate to combat discrimination in all aspects of American life, including in transportation, and

as the Second Circuit reiterated, recognized that some costs would be substantial.  *See Roberts*, 542 F.3d at 371 ("The statute and regulations require that such facilities be made accessible even if the cost of doing so—financial or otherwise—is high."); *see generally supra* at Point B.

In arguing otherwise, Defendants again rely on cases not involving the federal government's enforcement of federal laws.  *See* Dkt. No. 163 at 38 n.31 (citing *In re Metroplex on the Atl., LLC*, 545 B.R. 786, 788 (Bankr. E.D.N.Y. 2016) (debtor moved for "an order in support of confirmation of [] Amended Chapter 11 Plan determining that [certain property] may be sold under the Plan"); *Sunrise Plaza Assocs., L.P. v. Int'l Summit Equities Corp*., 288 A.D.2d 300, 733 N.Y.S.2d 443 (2001) (property easement dispute between "owners of adjoining parcels which constitute unified shopping center"); *Garvey v. Long Island R. Co*., 159 N.Y. 323, 323, 54 N.E. 57 (1899) (dispute involving turntable in railroad yard)).  Defendants' burden to comply with the law may be "high," *Roberts*, 542 F.3d at 371, but inescapable.

### E.  The United States Is Not Subject to a Statute of Limitations for Equitable Relief Under the ADA

While private plaintiffs may be subject to a three-year statute of limitations for ADA claims, that statute of limitations does not apply to claims for injunctive or declaratory relief by the United States.  Defendants ignore this distinction and fail to cite a single case involving claims for injunctive relief by the United States.

"It is well established that, unless Congress expressly provides otherwise, the United States is not bound by statutes of limitations."  *United States v. Tanski*, No. 1:04-CV-714, 2007 WL 1017020, at *6 (N.D.N.Y. Mar. 30, 2007) (citing *United States v. Incorporated Village of Island Park*, 791 F. Supp. 354, 364 (E.D.N.Y. 1992); *Guaranty Trust Co. of N.Y. v. United States*, 304 U.S. 126, 132-33 (1938)); *see also United States v. Hongyan Li*, 619 F. App' x 298 (5th Cir. 2015) ("the United States is not bound by any limitations period unless Congress

explicitly directs otherwise") (citing *United States v. City of Palm Beach Gardens*, 635 F.2d 337, 339 (5th Cir. 1981) ("courts have long held that the United States is not bound by any limitations period unless Congress explicitly directs otherwise")).  Neither the ADA nor any other federal law provides a statute of limitations for claims by the United States seeking declaratory or injunctive relief.  *See United States v. AMC Entm't, Inc*., 232 F. Supp. 2d 1092, 1117 (C.D. Cal 2002) ("The United States is not subject to any state statute of limitations and is subject to a limitations period only when Congress expressly creates one by federal statute. There is no federal statute that imposes a limitations period for an enforcement action by the Government under the ADA.") (internal citations omitted), *rev'd on other grounds*, 549 F.3d 760 (9th Cir. 2008).  As a result, the United States is not bound by any such timing restrictions.  *See, e.g*., *Tanski*, 2007 WL 1017020, at *6.

Neither the ADA nor any other federal law imposes a statute of limitations for injunctive relief brought by the United States.  While Congress did enact a statute of limitations for federal claims seeking civil fines and penalties, *see* 28 U.S.C. § 2642, there is no such statute of limitations for claims for injunctive or declaratory relief brought by the United States.  And once again, Defendants ignore this bedrock rule and rely upon inapposite cases involving private litigants and not the federal government.  *See* Dkt. No. 163, at 44-45 (citing *Forsee v. Metro. Transportation Auth*., No. 19 CIV. 4406 (ER), 2020 WL 1547468, at *1 (S.D.N.Y. Mar. 31, 2020) (class action against MTA); *De La Rosa v. Lewis Foods of 42nd St.*, *LLC*, 124 F. Supp. 3d 290, 292 (S.D.N.Y. 2015) (ADA claim by patron against restaurant); *Purcell v. New York Inst. of Tech. - Coll. of Osteopathic Med*., 931 F.3d 59, 60 (2d Cir. 2019) (ADA claim by student against medical school)).

Accordingly, because the United States is not seeking any fines or penalties here, there is

no applicable statute of limitations.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court grant

Plaintiffs' motion for partial summary judgment and deny Defendants' cross-motion for partial

summary judgment.


Dated: New York, New York
        August 10, 2020



                                    AUDREY STRAUSS
                                    Acting United States Attorney for the
                                    Southern District of New York


                            By:     _/s/ Ellen Blain_____
                                    LARA K. ESHKENAZI
                                    ELLEN BLAIN
                                    Assistant United States Attorneys
                                    86 Chambers Street, 3rd Floor
                                    New York, New York 10007
                                    Telephone:  (212) 637-2758/2743
                                    E-mail:   lara.eshkenazi@usdoj.gov
                                             ellen.blain@usdoj.gov